In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2351

Dragan Dimenski,

Petitioner,

v.

Immigration and Naturalization Service,

Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals.

Argued December 4, 2001--Decided December 19, 2001

Before Bauer, Posner, and Easterbrook,
Circuit Judges.

Easterbrook, Circuit Judge.  Dragan Dimenski, who entered the United States as a tourist in 1987, failed to leave when his visa expired. After being caught, he filed an application for asylum. That application was denied on initial review and then abandoned. Today he seeks suspension of deportation so that he can apply for permanent-resident status as the relative of a U.S. citizen (his daughter Susana). Suspension of deportation is not available, however, to an alien excluded from the United States; such an alien must return to his native land and wait ten years before obtaining a new visa there. 8 U.S.C. sec.1182(a)(9)(A)(ii). In this petition for review of the order excluding him, Dimenski contends that he is not subject to exclusion (as opposed to deportation) because he entered the country initially on a valid visa.

If Dimenski had remained in the United States continuously since 1987, deportation would be the appropriate action. (Proceedings commenced before April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009, so we use the terminology and rules of the former law rather than the unified removal proceeding under the new statute.) But he

took a month-long trip outside the United States in 1993 to visit a sick relative. Before leaving he sought "advance parole"--that is, assurance that he would be readmitted to the United States notwithstanding the lack of a visa. 8 U.S.C. sec.1182(d)(5). His request was granted, and he was readmitted without hassle when he returned. "Without hassle" differs from "without consequence"; a person paroled into the United States (before the effective date of the iirira) normally is placed into exclusion rather than deportation proceedings, and the rights of aliens differ in the two kinds of proceedings. See Landon v. Plasencia, 459 U.S. 21, 25-27 (1982).

Counsel representing the ins either believed otherwise initially or just did not think about the significance of the parole. The ins opened a deportation proceeding in September 1994 by issuing an order to show cause. But in March 1995 the ins filed a motion to dismiss the deportation proceeding in order to clear the way for an exclusion proceeding. Dimenski, represented by counsel, did not respond to this motion, which the immigration judge granted in due course. The Board of Immigration Appeals dismissed Dimenski's appeal, observing that he was not aggrieved by the termination of the only proceeding then pending. In November 1996 the ins got exclusion proceedings under way. Dimenski did not seek any of the options (such as asylum) available to aliens in exclusion proceedings, and an order excluding him eventually was entered. Once again the Board of Immigration Appeals dismissed his appeal, this time stating that Dimenski had forfeited all opportunity to resist exclusion when his lawyer failed to oppose dismissal of the deportation proceeding in 1995.

Taking a cue from the bia's decision, the ins argues that this court lacks jurisdiction because Dimenski failed to use all of his administrative remedies. This is a confused position. Failure to make the right argument at the right time before an immigration judge may work a forfeiture, but it does not divest this court of jurisdiction when an alien has filed a timely petition to review a final administrative decision. We have ample authority to determine whether an alien adequately preserved his legal position

in the administrative process; indeed we have jurisdiction to determine the scope of our own authority even when the agency believes that the alien has committed crimes or otherwise performed an act that disqualifies him from judicial review of his substantive position. See Yang v. INS, 109 F.3d 1185 (7th Cir. 1997). Likewise the bia was confused. It seems to have believed that the motion to dismiss filed in March 1995 put at issue the propriety of exclusion proceedings. Yet it did not. The only relief sought was dismissal of the deportation action, which Dimenski had no reason to oppose-- after all, if the ins failed to initiate a new proceeding, then his place in the United States was secure. The reason the ins sought dismissal is irrelevant. To see this consider a criminal prosecution. Suppose that the prosecutor, having obtained one indictment, moves to dismiss, anticipating that the grand jury later will indict the accused for a different offense. The accused, delighted to be free of prosecution, acquiesces in the motion. Has he forfeited all opportunity to argue that a new indictment (if one should be returned) is defective? Of course not. Nor does a civil litigant abandon any rights by remaining silent when his adversary voluntarily dismisses a lawsuit. Although the ins could adopt rules that differ from those governing litigation, it has not done so; neither the bia nor counsel representing the ins in this court cited any regulation requiring an alien to treat a motion to dismiss a proceeding as if it were, say, to convert one ongoing proceeding from deportation to exclusion. An agency may not bushwhack a private party by invoking a principle of forfeiture that is abnormal in litigation and not required (even hinted at) by administrative regulations or precedents.

So is exclusion the right device? Yes, it is, for it is (well, was until 1997) the administrative response to a person who enters, or tries to enter, the United States without a visa. Dimenski had a visa in 1987 but not in 1993. The point of parole is to admit someone who lacks a visa, and the ins has consistently taken the position, with the support of Leng May Ma v. Barber, 357 U.S. 185 (1958), that parolees (which Dimenski became) go into exclusion rather than deportation proceedings. About all Dimenski can offer

in response is that the regulation attempting to make this clear appeared in a portion of the Code of Federal Regulations principally concerned with adjustment of status rather than asylum. The regulation (since modified, but applicable in its original form to pre-iirira cases) provided:

The departure from the United States of an applicant who is . . . not under deportation proceedings shall be deemed an abandonment of his or her application constituting grounds for termination, unless the applicant was previously granted advance parole by the Service for such absence, and was inspected upon returning to the United States. If the application of an individual granted advance parole is subsequently denied, the applicant will be subject to the exclusion provisions of section 236 of the Act. No alien granted advance parole and inspected upon return shall be entitled to a deportation hearing.

8 C.F.R. sec.245.2(a)(4)(ii). Dimenski departed holding advance parole and was inspected on his return; his request for asylum later was denied (and then abandoned). One would suppose that the last sentence of this regulation thus controls: "No alien granted advance parole and inspected upon return shall be entitled to a deportation hearing." Even if, as Dimenski contends, the placement of this regulation among others dealing with adjustment of status could be misleading, a court is obliged to accept an agency's plausible reading of its own regulations. Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 94-97 (1995); Homemakers North Shore, Inc. v. Bowen, 832 F.2d 408, 411-12 (7th Cir. 1987). And the ins's view that this language applies to applications of all sorts, not just applications for adjustment of status, is plausible; it is consistent with the norm (and the holding of Leng May Ma) that a person paroled into the United States lands in exclusion proceedings.

Nonetheless, Dimenski insists, it was improper to exclude rather than deport him, because the form he filled out to apply for advance parole did not warn him that one consequence of the parole device is to place the returning alien in exclusion proceedings if his pending application for discretionary relief

should be denied after his return. Dimenski does not say that the form he used misled him or that he failed to receive the two benefits of advance parole (easy readmission, and continuation of the pending asylum request, which would have been deemed abandoned had he departed without notifying the ins). Instead, Dimenski argues, the form should have alerted him to the downside of the transaction. He relies on Navarro-Aispura v. INS, 53 F.3d 233 (9th Cir. 1995), which holds that notice on the form is essential for all aliens other than those who were seeking adjustment of status at the time of their departure. The ninth circuit did not trouble to explain why application forms must contain this information. Nothing in the immigration statutes requires the ins to give legal advice, let alone to put that advice in tiny type on forms. Perhaps the ninth circuit thought that the Constitution requires this; during the 1990s that court held on several occasions that the due process clause of the fifth amendment requires public offi cials to give advice about how private parties can best use their legal remedies. But West Covina v. Perkins, 525 U.S. 234 (1999), rejected that view and held that the Constitution does not require legal advice about how to use, or the consequences of using, particular remedies.

Any other position would have astonishing sweep. Think for a moment of tax law. There are endless forms to fill out, and each decision about how to classify a transaction may have substantial effects, yet attempting to fit the Internal Revenue Code (and the implementing regulations) onto the forms would be an absurd project. In immigration law, as in tax law--and criminal law, too, where knowledge of the law is presumed, cf. United States v. Carlos-Colmenares, 253 F.3d 276 (7th Cir. 2001) (an alien's reasonable, but mistaken, belief that he was entitled to reenter the United States is no defense to prosecution)--the Constitution permits the government to leave people to their own research. Although the ninth circuit's approach in Navarro-Aispura is well-meaning, it accomplishes little. Suppose the form had told Dimenski that he would be placed into exclusion proceedings on his return. Just what good

would that have done him? How many aliens know the different legal consequences of deportation versus exclusion? To learn these, an alien must consult counsel; and if Dimenski had done this in 1993, he would have learned about Leng May Ma and sec.245.2(a)(4)(ii) (more likely, about their legal effects) no matter what the form had included or omitted. These days, with all aliens subjected to unified removal proceedings, even the advice that the ninth circuit contemplated would be pointless. Perhaps the ins should print on every form in conspicuous type something like "Consult a lawyer before you file this!", but neither the statute nor the Constitution requires such advice.

Affirmed