Sikiru **BALOGUN,** Petitioner,

v.

**UNITED STATES ATTORNEY GENERAL, Immigration and Naturalization Service, Respondents.**

No. 00–12442.

United States Court of Appeals, Eleventh Circuit.

Sept. 10, 2002.

Teresa Wynn Roseborough, Deborah M. Danzig (Court-Appointed), Sutherland, Asbill & Brennan, LLP, Atlanta, GA, for Petitioner.

Brenda E. Ellison, David V. Bernal, Anthony Cardozo Payne, Shelley R. Goad, Linda S. Wendtland, U.S. Dept. of Justice, OIL, Washington, DC, for Respondents.

Before BIRCH, MARCUS and CUDAHY *, Circuit Judges.

CUDAHY, Circuit Judge:

Sikiru Balogun is a 50 year-old Nigerian male who lived in this country approximately 20 years before he was deported in December of 2000. Prior to his deportation (or "removal" in the terminology of the current law), proceedings were underway at the Immigration and Naturalization Service (INS) to designate Balogun as a

* Honorable Richard D. Cudahy, U.S. Circuit Judge for the U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

legal resident. In 1998, Balogun obtained an INS clearance, known as an "advance parole," to travel to Nigeria for his mother's funeral. Balogun believed that the advance parole document would guarantee his reentry into the U.S. However, upon his return, Balogun was apprehended by the INS. The agency claimed that Balogun's criminal record made him ineligible for the immigration status he was requesting. In subsequent proceedings, an immigration judge ruled that Balogun was an inadmissible alien subject to immediate removal. This decision was then affirmed by the Board of Immigration Appeals (BIA). Shortly after he filed his appeal in this court, Balogun's removal order was carried out and he was returned to Nigeria. Appointed counsel is now litigating this matter on behalf of Balogun.

 A provision of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA), codified at 8 U.S.C. § 1252(a)(2)(C), precludes judicial review of removal orders entered against certain aliens like Balogun who have committed a crime of moral turpitude. The first issue in this case is therefore whether § 1252(a)(2)(C) applies to Balogun's removal order, thereby depriving this court of jurisdiction to hear his appeal. However, even if § 1252(a)(2)(C) applies, appellate review of Balogun's order may still be appropriate if he raises a "substantial constitutional" challenge to his removal. *Brooks v. Ashcroft*, 283 F.3d 1268, 1273 (11th Cir.2002) (citing *Calcano–Martinez v. INS*, 533 U.S. 348, 350 n. 2, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001)); *accord Oguejiofor v. Attorney General*, 277 F.3d 1305, 1308–09 (11th Cir.2002) (per curiam). Since Balogun can clear neither of these hurdles, we dismiss his appeal for lack of jurisdiction.

### I.

At first glance, this case presents us with a relatively straightforward jurisdictional question. However, in order to obtain our review of his removal order, Balogun argues that the events leading to his removal raise substantial issues of constitutional law: specifically, whether he received constitutionally adequate notice from the INS officials regarding the legal implications of his advance parole. An important subsidiary issue is whether certain changes in U.S. immigrant law brought about by the IIRIRA are impermissibly retroactive. Therefore, our background discussion necessarily refers to some of the relevant legal authorities that Balogun must invoke, or distinguish, to make his constitutional challenge.

### A.

Sikiru Balogun was born in Nigeria in 1952. He entered this country for the first time in 1981 as a legal, non-immigrant visitor. Balogun subsequently settled in Staten Island, New York, where he resided for the next 18 years. While overstaying his visitor status, Balogun eventually ran afoul of the law. In March 1987, he was arrested on a state criminal charge of sale of a controlled substance; he pleaded guilty in February 1988 and received a sentence of one to three years. In August 1990, Balogun was arrested for petit larceny; in April 1991, he pleaded guilty and was sentenced to conditional discharge. He served no time in prison for the larceny offense.

Although Balogun may not have been aware of this fact at the time, these two offenses drastically altered his immigration status. Under the version of the Immigration and Nationality Act (INA) then in effect, any alien convicted of certain controlled substance violations was subject to immediate deportation. *See* 8 U.S.C.

§ 1251(a)(11) (1988). Similarly, under the version of the INA in effect in 1991, "Any alien who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor ... is deportable." 8 U.S.C. § 1251(a)(2)(A)(ii) (Supp. III 1991), *now recodified at* 8 U.S.C. § 1227(a)(2)(A)(ii). Therefore, after 1988, if the INS commenced deportation proceedings against Balogun, his only hope of staying in this country was to obtain a form of discretionary relief, commonly known as § 244(a)(2) of the INA, which was then available under U.S. immigration law.[1] Section 244(a)(2), which has since been repealed by the IIRIRA, reads in relevant part:

> [T]he Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien ... who ... has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act ... constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1254(a)(2) (1988) (repealed by Pub.L. 104–208, § 304(b), 100 Stat. 3009–597 (1996)).

After his brush with the law in 1991, Balogun appeared to turn his life around. In 1994, Balogun married his present wife, Victoria Balogun, who became a U.S. citizen in 1996. The couple are now the parents of three children. Prior to his removal, Balogun was active in his church and volunteered in an organization that benefits mentally retarded children.

**B.**

On September 30, 1996, Congress passed the IIRIRA. This legislation contained at least three major changes in U.S. immigration law that ultimately affect Balogun's case. The first change was the adoption of the term "removal," which essentially eliminated a distinction that formerly existed between "deportation" proceedings and "exclusion" proceedings. *See Calcano–Martinez v. INS*, 533 U.S. 348,

---

1. Section 244(a)(2) was a form of discretionary relief that was available to aliens who were *seeking* permanent resident status. In contrast, § 212(c) of the INA, formerly codified at .8 U.S.C. § 1182(c)(2) (1994) and also repealed by the IIRIRA, was a similar type of discretionary relief that was only available to deportable aliens who had previously obtained permanent resident status. In *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court held that (1) the IIRIRA jurisdiction-stripping provision, 8 U.S.C. § 1252(a)(2)(C), did not affect the power of the federal courts to consider habeas petitions of aliens who were under a removal order because of the commission of certain enumerated criminal offenses, 533 U.S. at 314, 121 S.Ct. 2271; and (2) the repeal of § 212(c) could not be retroactively applied to the petitioner's situation because he had entered into a plea bargain prior to the enactment of the IIRIRA that preserved his right to apply for § 212(c) relief, *id.* at 326, 121 S.Ct. 2271. There are important distinctions between § 212(c) and § 244(a)(2); nonetheless, Balogun insists that the Court's retroactivity analysis in *St. Cyr* applies to § 244(a)(2) and to his specific situation. *See* note 5, *infra*. Of course, the procedural posture of this case is different from a habeas petition under 28 U.S.C. § 2241; hence Balogun's emphasis on the violation of his substantial constitutional rights.

350 n. 1, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001) (noting "statute-wide change in terminology"). Thus, a determination whether an alien is "inadmissible" (i.e., cannot, or did not, enter the country lawfully), *see* 8 U.S.C. § 1101(a)(13), or "deportable" (i.e., entered the country lawfully but is no longer entitled to stay), *see* 8 U.S.C. § 1227(a), would be determined through "removal" proceedings, *see* 8 U.S.C. § 1229a(a) (defining removal proceeding as the "exclusive procedure" for determining the "inadmissibility or deportability of an alien").

A second change was an amendment to 8 U.S.C. § 1252, which defines our authority to review removal orders issued by the Board of Immigration Appeals (BIA). Although under the new version of the law we retain our ability "to consider petitions challenging 'final orders' commanding the 'removal' of aliens from the United States," the new law also eliminated our jurisdiction "to review any final order of removal against any alien who is removable by reason of a conviction for certain criminal offenses," including any offense encompassed by 8 U.S.C. § 1182(a)(2). *Calcano–Martinez*, 533 U.S. at 350. Since both of Balogun's prior offenses fall within the purview of § 1182(a)(2),[2] there is little doubt that 8 U.S.C. § 1252 applies to this case.

The third, and perhaps most significant change, was the repeal of § 244(a)(2), formerly codified at 8 U.S.C. § 1254(a)(2), providing for certain discretionary relief from deportation (or removal, under the terminology of the current law). Although Balogun had not yet satisfied the requirement of ten years of continuous physical presence in this country following the commission of his last criminal offense in 1991 (as required by § 244(a)(2)), the discretionary relief available under § 244 represented Balogun's only hope of remaining in this country in the event the INS commenced removal proceedings against him.

### C.

During the same period that Congress was revising U.S. immigration law, Balogun was pursuing conventional avenues of immigration relief. In 1997, the INS issued Balogun an approved I–130 Immediate Relatives Immigrant Visa, which permitted Balogun to apply for permanent resident status. A meeting regarding Balogun's adjustment of status application was scheduled to take place on August 24, 1999.

However, it is important to note that adjustment of Balogun's immigration status was not possible for Balogun unless he could demonstrate that he was "admissible" to the United States as a permanent resident. 8 U.S.C. § 1255(a)(2). As noted, Balogun was plainly inadmissible under the terms of § 1182(a)(2), and the only form of discretionary relief, § 244(a)(2) of the INA, had been repealed.[3] Therefore,

---

**2.** Section 1182(a)(2)(A)(i), which applies to both the drug and larceny offenses, reads in pertinent part:

[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—(I) a crime involving moral turpitude (other than a purely political offense) ... (II) a violation of ... any law or regulation of a State, the United States, or a foreign country relating to a controlled sub-

stance (as defined in section 802 of title 21), is inadmissible.

Balogun is also inadmissible under § 1182(a)(2)(C), which applies to aliens who have been illicit traffickers in a controlled substance.

**3.** After the passage of the IIRIRA, the Attorney General could cancel removal of "inadmissible" or "deportable" aliens under certain limited conditions; however, these conditions specifically excluded any alien

prior to his departure for Nigeria in 1998, Balogun had only one plausible route to obtain permanent resident status. Balogun committed his petit larceny offense some time before August 1990.[4] Therefore, assuming that (a) the continuous presence requirement of former § 244(a)(2) was not interrupted by the trip to Nigeria, and (b) discretionary relief under former § 244(a)(2) would still be available to him because he had entered into a plea agreement prior to the enactment of the IIRIRA, it is not implausible that Balogun would have been eligible for relief under former § 244(a)(2) at some point during the year 2000.

Balogun might have actually remained in the United States until this date had he received better legal advice. Instead, when his mother passed away in the fall of 1998, Balogun applied for and received an "advance parole." The term "advance parole" is an administrative procedure governed by § 212(d)(5) of the INA, codified at 8 U.S.C. § 1182(d)(5). A 1998 BIA opinion provides the following useful description:

> "Advance parole" is a mechanism by which a district director can, as a humanitarian measure, advise an alien who is in this country, but who knows or fears that he will be inadmissible if he leaves and tries to return, that he can leave with assurance that he will be *paroled* back into the United States upon return, under prescribed conditions, if he cannot establish that he is admissible at that time [e.g., by presenting a valid immigration visa].

*In re G–A–C–*, 22 I. & N. Interim Dec. 3354, at 7 (BIA 1998) (en banc). However, as the BIA goes on to note, an alien is not "paroled" upon the approval of his advance parole application. Instead, "the alien is advised in advance of a departure that, *if he meets certain conditions*, he will be paroled into the United States when he returns." *Id.* at 7 n. 3 (emphasis added).

In this case, Balogun apparently did not fully understand that his successful parole into the United States was only guaranteed if he was prima facie eligible for adjustment of his immigration status. He claims that he was led to believe that the issuance of the advanced parole would permit his "unhindered return into the U.S." Nevertheless, Balogun's one-page advanced parole letter (INS Form I–512), which he was required to present at the border upon his reentry, reads, "the holder of this authorization is an applicant for adjustment of status under the Immigration and Nationality Act.... *Contingent upon his or her prima facie eligibility*, the holder of this document shall be paroled into the United States," pursuant to the authority of the INS district director (emphasis added). Unfortunately, Balogun was not prima facie eligible for adjustment of his immigration status; at a minimum, his two criminal offenses under § 1182(a)(2) made him an inadmissible alien.

convicted of an aggravated felony. *Brooks,* 283 F.3d at 1271 & n. 3 (citing 8 U.S.C. § 1229b(a)). Under 8 U.S.C. § 1101(a)(43)(B), Balogun's 1988 drug charge alleges an aggravated felony.

4. Under the statutory text of § 1252(a)(2)(C), the focus is on the *commission* rather than the *conviction* of criminal offenses. *See Fernandez–Bernal v. Attorney General,* 257 F.3d

1304, 1308 (11th Cir.2001) ("By its plain language, [§ 1252(a)(2)(C) ] strips us of jurisdiction if the petitioner is (1) an alien (2) who is removable (3) because he '*committed* a criminal offense' enumerated in the statute." (quoting 8 U.S.C. § 1252(a)(2)(C))). Although it is not entirely clear from the record when Balogun committed the petit larceny offense, he was convicted on April 11, 1991.

That said, Balogun's entire constitutional claim reduces to this: The INS, and, specifically, the advance parole letter itself, failed to provide him with adequate notice of the potential consequences of his departure for Nigeria; these consequences included loss of his opportunity to complete the ten-year continuous presence requirement and thereafter to make his appeal for relief under the former § 244(a)(2) (incorporating his argument that the repeal of this section cannot be applied retroactively to him) in a context other than a removal proceeding.

### D.

With a copy of his advance parole document in hand, Balogun traveled to Nigeria and stayed for a period of four weeks. Upon his attempted return on January 23, 1999, Balogun was immediately detained and served with a Notice to Appear. As noted, Balogun's prior drug and larceny charges made him an "inadmissible" alien. Pursuant to 8 U.S.C. § 1229a, the INS commenced removal proceedings. After a prolonged period of confusion over whether Balogun was proceeding *pro se* or with the assistance of counsel, Balogun was given the opportunity to submit various documents to block his removal. However, in the course of these proceedings, Balogun admitted on the record that he had committed the drug and larceny offenses. The immigration judge therefore ruled that Balogun was removable as charged.

Balogun appealed this decision to the BIA. On April 21, 2000, the BIA sustained all the findings of the immigration judge, explicitly rejecting Balogun's argument that he had been denied a fair hearing. The BIA also rejected Balogun's argument, based on representations made to Balogun when he obtained his advance parole, that the INS should be barred from carrying out a removal order against him.

Since the BIA's decision, the course of Balogun's case has been downhill. On May 11, 2000, Balogun filed an appeal with this court and requested a stay of removal. On May 24, 2000, the INS filed a motion to dismiss the appeal for lack of jurisdiction. On August 19, 2000, we ordered that the motion to dismiss be heard with the merits. On September 19, 2000, we denied Balogun's request for a stay of removal. Balogun was then deported on December 9, 2000. However, after the INS filed its answering brief in the underlying appeal, this court appointed counsel for Balogun and allowed counsel to file a supplemental brief. We are now ready to rule on the jurisdictional issue under 8 U.S.C. § 1252(a)(2)(C), including Balogun's purported constitutional claims.

### II.

■ Our jurisdiction to review final orders of removal issued by the BIA is defined by 8 U.S.C. § 1252(a). Because Balogun's removal proceedings commenced after April 1, 1997, which is the effective date of the IIRIRA, this case is covered by the permanent provisions of the INA, as amended by the IIRIRA, including the current version of § 1252(a). *See Oguejiofor*, 277 F.3d at 1308 (current version applies to any removal proceeding commencing after April 1, 1997); *Moore v. Ashcroft*, 251 F.3d 919, 922 n. 4 (11th Cir.2001) (noting that IIRIRA amended provisions for judicial review formerly codified at 8 U.S.C. § 1105a, and that "8 U.S.C. § 1252 [is now] commonly known as the IIRIRA permanent rules"); *Alanis–Bustamante v. Reno*, 201 F.3d 1303, 1306–07 (11th Cir. 2000) (discussing when transitional versus permanent rules for the IIRIRA apply).

■ Although 8 U.S.C. § 1252(a) vests this court with general authority to review final orders directing the removal of an

alien from the United States, it also strips us of jurisdiction to review certain types of removal orders. Section 1252(a)(2)(C) reads in pertinent part: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or [various other crimes specified in section 1227(a)(2) ]." We are without jurisdiction to review a removal order if the petitioner is (1) an alien (2) who is removable (3) because he committed a criminal offense enumerated in the statute. *See Fernandez–Bernal v. Attorney General*, 257 F.3d 1304, 1308 (11th Cir.2001); *Galindo–Del Valle v. Attorney General*, 213 F.3d 594, 597 (11th Cir.2000) (per curiam). The government has carefully documented the presence here of these three elements. Therefore, we conclude that § 1252(a)(2)(C) strips this court of a statutory basis to review Balogun's removal order.

■ Obviously anticipating this result, Balogun claims that we nonetheless retain jurisdiction to hear his appeal because he has raised a substantial constitutional challenge to his removal. As previously noted, several of our precedents have acknowledged such a possibility. *See, e.g., Brooks,*

283 F.3d at 1273 (stating that "we are not foreclosed from consideration of [an alien's appeal of a removal order] if he has raised substantial constitutional issues" (citing dicta in *Calcano–Martinez*, 533 U.S. at 350 n. 2, 121 S.Ct. 2268)); *Oguejiofor*, 277 F.3d at 1308 (same); *Moore v. Ashcroft*, 251 F.3d 919, 923–24 (11th Cir.2001) (same); *Galindo–Del Valle*, 213 F.3d at 598 (same); *Richardson v. Reno*, 180 F.3d 1311, 1316 n. 5 (11th Cir.1999) (same).

Here, Balogun claims that his due process rights under the Fifth Amendment were violated when the INS conveyed to him the false impression that the grant of advance parole would permit him an unhindered return to the United States. Although Balogun, as an inadmissible alien, is ineligible for an adjustment of his immigration status to that of a permanent resident, *see* 8 U.S.C. § 1255(a)(2), he asserts that he would have eventually been eligible for discretionary relief under the now-repealed § 244(a)(2) but for the inadequate notice provided by the INS and, in particular, by the advance parole document. Citing the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), Balogun further contends that the specific provision of the IIRIRA that repealed § 244 is impermissibly retroactive to his situation.[5]

5. The issue of retroactivity is not necessarily Balogun's most formidable hurdle. In *St. Cyr*, the Supreme Court held that the repeal of § 212(c) of the INA, which had permitted a form of discretionary relief similar to the repealed § 244, did not apply retroactively to aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 533 U.S. at 326, 121 S.Ct. 2271. In reality, Balogun's case may be weaker than that of the alien in *St. Cyr* because Balogun's eligibility under § 244(a)(2), which was repealed at the same time as § 212(c), required that the alien be continuously physical presence in the United

States for an additional ten years after the commission of a deportable offense.

Nonetheless, in *Jimenez–Angeles v. Ashcroft*, 291 F.3d 594 (9th Cir.2002), the Ninth Circuit addressed the issue whether the repeal of § 244 could be applied retroactively to events that occurred prior to the effective date of the IIRIRA, and the court's reasoning suggests that accused criminals such as Balogun, who had entered into a plea agreement, at least has a colorable argument against retroactive application. In *Jimenez–Angeles*, an alien attempted to secure the benefits of § 244 relief by turning herself in to the INS one month before the effective date of the IIRIRA. *Id.* at 601–02. Under the repealed § 244(a)(1),

Balogun's argument is a longshot, and we believe that it fails for at least two reasons. First, the only prejudice suffered by Balogun is that he has lost the *possibility* of discretionary relief at some point in the future. As the government correctly points out, even before Balogun departed for Nigeria under the false impression that his advance parole letter provided him with some sort of safe haven from U.S. immigration law, he was a deportable alien subject to removal proceedings at any time. *See* 8 U.S.C. § 1227(a)(2)(A)(ii) ("Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, ... is deportable."); 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony [including a drug offense under § 1101(a)(43)(B) ] at any time after admission is deportable"). While Balogun's departure to Nigeria and attempted reentry transformed him from a "deportable" to an "inadmissible" alien, this is ultimately a distinction without a difference; both categories of aliens are subject to identical removal proceedings.[6]

*See* 8 U.S.C. § 1229a(a). The only mechanism that could possibly help him was § 244(a)(2) discretionary relief, which the IIRIRA did away with.

■ In this circuit, "an alien has no constitutionally-protected right to discretionary relief or to be eligible for discretionary relief." *Oguejiofor*, 277 F.3d at 1309 (rejecting argument that retroactive application of IIRIRA's repeal of § 212(c) discretionary relief raises a substantial constitutional issue); *accord Mohammed v. Ashcroft*, 261 F.3d 1244, 1250 (11th Cir. 2001); *Tefel v. Reno*, 180 F.3d 1286, 1301–02 (11th Cir.1999). Under *Oguejiofor*, if we have been denied jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(c), issues of discretionary relief and of the alleged retroactive application of the IIRIRA cannot be considered on direct appeal. 277 F.3d at 1309 (distinguishing the Supreme Court's decision in *St. Cyr* because the Court addressed the issues of discretionary relief and retroactive application of the IIRIRA in the context of habeas petition and therefore the jurisdiction-stripping provisions of 28 U.S.C. § 1252(a)(2)(C) did not apply).

which is a provision different from subsection (a)(2), relied upon by Balogun, an alien could petition for a "suspension of deportation" if he or she met certain requirements, including seven years of continuous presence in the U.S. The alien in *Jimenez–Angeles* had more than the seven years required by the repealed § 244(a)(1), but less than the ten years required for "cancellation of removal" under the post-IIRIRA version of the INA. *See id.* at 597 (citing 8 U.S.C. § 1229b(b)). The alien therefore claimed that the IIRIRA was impermissibly retroactive to her situation. After applying the *St. Cyr* retroactivity analysis, the Ninth Circuit rejected this argument, reasoning that her conduct was unlike the type of formal reliance that occurs in a plea bargain, "in which each side consensually gives, and gets, something of value." *Id.* at 602. Since Balogun pleaded guilty in 1991 in exchange for a conditional discharge, the facts of this case come closer to the impermissible retroactivity ruling in *St. Cyr*. That said, our rul-

ing today does not require us to reach this issue. We therefore reserve judgment.

6. Under the pre-IIRIRA version of the INA, use of advance parole to leave the country and then reenter automatically meant that an alien could be subject to "exclusion" rather than "deportation" proceedings, with a corresponding loss in due process safeguards and ineligibility for certain forms of discretionary relief. *See Landon v. Plasencia*, 459 U.S. 21, 25–27, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (explaining difference between two proceedings); *Barney v. Rogers*, 83 F.3d 318, 319–20 (9th Cir.1996) (explaining differences between these prior procedures and effect of reentry through use of advance parole). As mentioned earlier, Balogun's removal proceedings began after the effective date of the IIRIRA. Despite Balogun's arguments to the contrary, these distinctions are not relevant to this case.

██ The second reason why Balogun's constitutional challenge fails is that the INS has no duty, constitutional or otherwise, to provide legal advice to aliens who petition the agency for a grant of advance parole. *See Dimenski v. INS*, 275 F.3d 574, 578 (7th Cir.2001) (holding that neither the due process requirement of the Fifth Amendment nor the immigration statutes "require[] the INS to give legal advice, let alone to put that advice in tiny type on forms"). Balogun's only support for his argument comes from *Navarro–Aispura v. INS*, 53 F.3d 233 (9th Cir. 1995). In that case, the Ninth Circuit held that an alien was entitled to a deportation rather than an exclusion proceeding (and therefore to additional procedural and substantive rights) because his advance parole document referred only to possible adverse consequences for aliens applying for adjustment of status, though the same consequences threatened aliens involved in registry proceedings. *Id.* at 236. Although the court found that the advance parole document was incomplete and thus likely to be ignored by an alien in registry proceedings, rather than in adjustment of status proceedings, the opinion itself contains no reference whatsoever to constitutional rights. *Cf. Dimenski*, 275 F.3d at 578 (questioning the legal basis for the Ninth's Circuit decision in *Navarro–Aispura* and discounting the possibility that it could be grounded in the Fifth Amendment's due process clause (citing *West Covina v. Perkins*, 525 U.S. 234, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999))).

In summary, Balogun's immigration problems were far too complex to be adequately counseled by INS boilerplate, and there is no constitutional duty that requires the agency even to try. Moreover, there is nothing in the record to suggest that INS officials did anything improper, much less engaged in the type of deliberate misconduct that could raise the specter of a due process violation. It is nonetheless the unfortunate fact that Balogun might have been much better off had he not demonstrated his familial piety by traveling to his mother's funeral in Nigeria.

### III.

Because Balogun has committed two crimes that trigger the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(C), we do not have statutory authority to review the final order of the BIA. Further, Balogun's removal does not raise any substantial issues of constitutional law. Therefore, this case is DISMISSED for lack of jurisdiction.