Samba MBAYE, Petitioner,

v.

John ASHCROFT, Attorney General;
Immigration and Naturalization
Service, Respondents.

No. 02–3913.

United States Court of Appeals,
Sixth Circuit.

Aug. 5, 2004.

E. Dennis Muchnicki, Dublin, OH, for
Petitioner.

Efthimia S. Pilitsis, Terri J. Scadron,
U.S. Department of Justice, Washington,
DC, for Respondents.

Before KENNEDY, SUTTON, and
COOK, Circuit Judges.

*ORDER*

Samba Mbaye, a native and citizen of
Mauritania, petitions for review of the
Board of Immigration Appeals (BIA) deci-
sion that affirmed the decision of an im-
migration judge (IJ) to deny Mbaye's ap-
plication for asylum and withholding of
removal. Mbaye has been deemed to
have waived oral argument because he
failed to respond to this court's show
cause letter concerning the waiver of such
argument. *See* Fed. R.App. P. 34.

Mbaye entered the United States with-
out inspection in May 1995. The Immigra-
tion and Naturalization Service began re-
moval proceedings in December 1997.
Mbaye conceded removability and applied
for asylum, withholding of removal, and
protection under the Convention Against
Torture. An IJ held a hearing on April
15, 1999. In his application and testimony,
Mbaye stated that in 1989 he was arrested,
beaten, tortured, burned, and questioned

by government officers because he is black. According to Mbaye, after four months in detention he escaped and fled to Senegal. Mbaye left Senegal in 1995 and traveled to the United States. The IJ found that Mbaye was not credible, and that even if his testimony was accepted as true, he had not established a well-founded fear of persecution upon his return to Mauritania because conditions there had improved. The BIA affirmed the IJ's decision without opinion, and Mbaye filed a timely petition for review.

In his petition for review, Mbaye argues: (1) the BIA erred when it adopted the IJ's denial of his asylum application on the basis of an adverse credibility determination; (2) the BIA erred when it adopted the IJ's failure to apply the correct legal standard to determine whether Mbaye had a reasonable fear of future persecution; (3) the BIA's use of summary affirmance without opinion was unlawful because it does not reflect individual consideration of Mbaye's appeal; and (4) the IJ erred in determining that Mbaye had firmly resettled in Senegal.

Initially, we note that Mbaye does not argue that the BIA erred by affirming the denial of his claim under the Convention Against Torture. Accordingly, he has waived this claim. *See Enertech Elec., Inc. v. Mahoning County Comm'rs,* 85 F.3d 257, 259 (6th Cir.1996).

This case is covered by the permanent provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 because the removal proceedings began after April 1, 1997, the effective date of the act. *See Balogun v. United States Att'y Gen.,* 304 F.3d 1303, 1309 (11th Cir. 2002). Under these rules, findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). When the BIA affirms the IJ's decision without opinion, we review the IJ's deci-

sion as the final agency order. *Denko v. INS,* 351 F.3d 717, 730 (6th Cir.2003).

■ Upon review, we conclude that the petition for review must be denied. First, the IJ's finding that Mbaye was not credible is supported by substantial evidence. *See de Leon–Barrios v. INS,* 116 F.3d 391, 394 (9th Cir.1997). The IJ identified several inconsistencies in the accounts Mbaye gave in his statement to an asylum officer, in his application for asylum, and in his testimony. Mbaye's asylum application indicated that he got married in 1982 and that his son was born in 1988. At the hearing, he was unable to say what year he was married or how old his child was. The asylum officer's assessment indicated that Mbaye remained in Mauritania until 1995, while Mbaye testified that he left Mauritania in 1989. Mbaye stated that he only communicated with his mother once since he left Mauritania, but a letter from his mother instructed him to call her at "the same number." Finally, Mbaye was unclear about how he had a photocopy of his identification card when he met with the asylum officer, since he said he left Mauritania with nothing. The discrepancies concerning when Mbaye left Mauritania are especially significant and go to the heart of Mbaye's claim for asylum. *See id.*

■ Second, the IJ's conclusion that Mbaye's evidence, even if true, did not support a claim for asylum is also supported by substantial evidence. The IJ found that conditions in Mauritania had changed and it would now be safe for Mbaye to return. The State Department reports indicated that although the government expelled thousands of black Mauritanians from 1989 to 1991, opposition parties participated in elections in 1994 and 1996 and many of the refugees had returned to Mauritania. Mbaye presented no evidence to the contrary. Accordingly, he did not establish that he had a well-founded fear of persecution upon his return to Maurita-

nia. *See Ouda v. INS,* 324 F.3d 445, 452 (6th Cir.2003).

Mbaye's arguments are without merit. The IJ's finding that Mbaye was not credible is supported by substantial evidence, the IJ properly relied on the changed country conditions in Mauritania to decide that Mbaye did not have an objectively reasonable fear of future persecution, and the BIA's summary affirmance of the IJ's decision did not violate Mbaye's rights. *See Denko,* 351 F.3d at 730. Finally, the IJ did not specifically hold that Mbaye's resettlement, as described in 8 C.F.R. § 208.15 (2002), required denial of his asylum application. The IJ stated only that the lengthy time period that Mbaye spent in Senegal was a basis for denying Mbaye's application in the exercise of discretion.

For the foregoing reasons, we deny the petition for review.