[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 19, 2005
THOMAS K. KAHN
CLERK

No. 04-16128
Non-Argument Calendar

_____

BIA Nos. A76-999-908 & A76-999-909

CLARITA MUNOZ-MANCILLA,
VALENTIN BELLAGAMBA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

(July 19, 2005)

Before TJOFLAT, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Clarita Munoz-Mancilla and Valentin Bellagamba ("Petitioners") seek

review of the Immigration Judge's ("IJ's") removal order, which became the final

agency determination when the Board of Immigration Appeals ("BIA") summarily affirmed it without an opinion. Because Petitioners' removal proceedings commenced after April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), this case is governed by the permanent provisions of the Immigration and Nationality Act ("INA"), as amended by IIRIRA. Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003).

## I.

Petitioners, husband and wife, are natives and citizens of Chile, S.A. They first entered the United States on February 24, 1988, as temporary visitors for pleasure with authorization to remain until August 23, 1988. They remained here without Immigration and Naturalization Service ("INS") authorization well beyond that exit date, however.

On November 10, 1998, Petitioners filed an application for adjustment of status on the basis of an approved visa petition filed by Mr. Bellagamba's sister, a United States citizen. On July 22, 1999, Bellagamba submitted an application for a travel document, requesting advance parole so he could travel to Chile to visit his mother, whom, he said, was "very sick." After submitting this application, he signed a "Notice to Applicant" form that contained the following advisement:

NOTICE TO APPLICANT:  Presentation of this authorization will permit you to resume your application for adjustment of status upon your return to the United States.  If your adjustment application is denied, you will be subject to removal proceedings under section 235(b)(1) or 240 of the Act.  **If, after April 1, 1997, you were unlawfully present in the United States for more than 180 days before applying for adjustment of status, you may be found inadmissible under section 212(a)(9)(B)(i) of the Act when you return to the United States to resume the processing of your application.**  If you are found inadmissible, you will need to qualify for a waiver of inadmissibility in order for your adjustment of status application to be approved.

The INS also provided Bellagamba with a form informing him of the time and date he had to return for a decision on his request for advance parole.  On this form, an INS official noted that Bellagamba "appears inadmissible under 212(a)(9)(B)."  The INS approved Bellagamba's request for advance parole on July 26, 1999, and he departed for Chile on August 20, 1999.

Ms Munoz-Mancilla applied for advance parole on August 23, 1999, so she could attend the wedding of her daughter in Chile.  She signed a "Notice to Applicant" form identical to the one her husband had signed.  In addition, she was given a notice as to the time and date of the decision on her application for advance parole, which stated that she could be subject to "possible inadmissibility under 212(a)(9)(B)."  The INS approved her application for advance parole on August 25, 1999, and she departed for Chile on September 7, 1999.

3

Mr. Bellagamba returned to the United States on September 20, 1999; Ms. Munoz-Mancilla returned eight days later. Both were paroled into the country. On September 28, 2000, the INS denied Bellagamba's application for adjustment of status on the ground that he was inadmissible under section 212(a)(9)(B)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(9)(B)(i), in that he had been unlawfully present in the United States for a period of more than a year and had sought admission within ten years of his departure. Because he did not have a qualifying relative for a waiver of inadmissability under section 212(a)(9)(B)(v) of the INA, 8 U.S.C. § 1182(a)(9)(B)(v), the INS found that he was ineligible for adjustment of status; he could not establish his admissibility into the United States.

On October 13, 2000, Petitioners filed a second application for adjustment of status, this time based on a pending petition for alien relative filed by their United States citizen daughter. On September 5, 2001, Munoz-Mancilla moved to withdraw her initial adjustment application in lieu of her second application, and the INS granted her request on September 20, 2001. On September 24, 2001, the INS denied Petitioners' second adjustment-of-status application for the reason it denied Bellagamba's first application. Because Petitioners did not have a

4

qualifying relative for a waiver of inadmissibility, the INS denied their applications on statutory eligibility grounds.

On September 18, 2002, the INS commenced removal proceedings against Petitioners. It charged Petitioners with being removable under sections 212(a)(7)(A)(i)(I) and 212(a)(9)(B)(i)(II) of the INA, 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and 1182(a)(9)(B)(i)(II), as immigrants not in possession of a valid entry document at the time of their application for admission and as aliens who had been unlawfully present in the United States for more than a year and had sought admission within ten years of their departure.

The IJ found Petitioners removable as charged. The judge concluded that an alien "who departs the United States under a grant of advance[] parole pending [his or her] adjustment application is considered an arriving alien as set forth in the regulations and applicable case law." The IJ found that Petitioners, as arriving applicants for admission, did not possess a valid entry document upon their return to the United States in 1999. The judge concluded that the "advance[] parole granted to both [Petitioners did] not fulfill the documentary requirements of Section[] 212(a)(7)(A)(i)(I) of the [INA]."

The IJ also found Petitioners removable under section 212(a)(9)(B)(i)(II) of the INA, insofar as they had been unlawfully present in the United States from

5

IIRIRA's April 1, 1997 effective date until November 10, 1998, the date they filed their first application for adjustment of status. The judge therefore found that they had been "unlawfully present in the United States for more than one year before returning to the United States from travel abroad," which made them inadmissible under 8 U.S.C. § 1182(a)(9)(B)(i)(II).

In lieu of removal, Petitioners renewed their application for adjustment of status. They contended that the ten-year bar to admissibility under 8 U.S.C. § 1182(a)(9)(B)(i)(II) should not apply to them because the INS had acted in bad faith in granting their applications for advance parole, knowing that their departure could result in their inadmissibility and ineligibility for adjustment of status. They also contended that 8 U.S.C. § 1182(a)(9)(B)(i) conflicted with 8 U.S.C. § 1255(i), under which nonimmigrant aliens in unlawful status could apply for adjustment of status without having to depart the country.

The IJ rejected their contentions, finding that both Petitioners were on express notice of the consequences of leaving the United States. Citing Balogun v. United States Attorney General, 304 F. 3d 1303 (11th Cir. 2002), and Dimenski v. INS, 275 F. 3d 574 (7th Cir. 2001), the judge noted that "the INS has no duty, constitutional or otherwise, to provide legal advice to aliens who petition the agency for a grant of advance[] parole." The judge added that, even though the

6

INS "was not required to give [Petitioners] any . . . warning or legal advice" regarding "the consequences of leaving the United States on a grant of advance[] parole," it had nonetheless done so by giving them the written "Notice to Applicant" forms which they signed at the time they requested advance parole.

In sum, the IJ found Petitioners ineligible for adjustment of status due to the ten-year bar to admissibility under INA § 212(a)(9)(B)(i)(II) and the fact that they were arriving aliens in removal proceedings. Finding no "authority or jurisdiction to extend any equity to [Petitioners]," the IJ ordered them removed to Chile. As noted above, the BIA affirmed the IJ's decision without opinion.

II.

In their brief, Petitioners argue that leaving the United States under an advance parole is not a "departure" as described in INA § 212(a)(9)(B)(i)(II), 8 U.S.C. § 1182(a)(9)(B)(i)(II). They rely not on the explicit statutory language, but on their interpretation of congressional intent. They theorize that, in enacting § 212(a)(9)(B)(i)(II), Congress sought to penalize aliens who overstayed their lawful admission status and had become eligible for a family or labor petition. Before this, prior illegal presence had no impact on admissibility. The purpose of INA § 245(i), 8 U.S.C. § 1255(i), they submit, was to prevent the harsh impact of INA § 212(a)(9)(B)(i) by allowing aliens to obtain visas without departing the

7

United States as they were previously to do. As Congress sought to protect the class of aliens similar to that of the Petitioners by not requiring that they leave the United States to obtain a visa, it could not have been Congress's intent to penalize them now.

An alien who has been paroled into the United States may seek an adjustment in status to that of a permanent resident provided that: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." INA § 245(a), 8 U.S.C. § 1255(a). Section 245(i) also requires that the applicant be admissible. INA § 245(i)(2)(A), 8 U.S.C. § 1255(i)(2)(A). Section 1182 of Title 8 of the United States Code provides:

> Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:
>
> Any alien (other than an alien lawfully admitted for permanent residence) who -
> (I) was unlawfully present in the United States for a period of more than 180 days but less than 1 year, voluntarily departed the United States (whether or not pursuant to section 1254a(e) of this title) prior to the commencement of proceedings under section 1225(b)(1) or section 1229(a) of this title, and again seeks admission within 3 years of the date of such alien's departure or removal, or
> (II) has been unlawfully present in the United States for one year or

more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible

8 U.S.C. § 1182(a)(9)(B)(i)(I), (II). The Attorney General has discretion to parole an alien into the United States temporarily. 8 U.S.C. § 1182(d)(5)(A). However, this parole is not regarded as an admission into the United States. Id. Instead, though the alien may enter the United States, he or she is considered constructively at the border. Assa'ad v. U.S. Att'y Gen., 332 F.3d 1321, 1338 (11th Cir. 2003). An alien granted parole may travel outside the United States during the pendancy of his application for change of status and not be considered to have abandoned his application. 8 C.F.R. § 245.2(a)(4)(ii)(B). However, if his application is denied, he will be treated as an applicant for admission and subject to INA § 212(a)(9)(B)(i). Id.

We conclude that the IJ correctly found Petitioners inadmissible. The grant of advance parole did not operate to prevent Petitioners' departure from the United States, but instead prevented their readmission. Further, though Congress may have intended to alleviate the harsh results possible with the application of INA § 212(a)(9)(B)(i) with § 245(i), Petitioners' did not avail themselves of its protection as they departed the United States and triggered § 212(a)(9)(B)(i).

9

Next, Petitioners contend (1) that an internal INS memorandum states that advance paroles should not be issued to adjustment-of-status applicants who have accrued more than 180 days of illegal presence in the United States unless it appears likely that such applicants would receive a waiver of inadmissibility, and (2) that the INS should be bound to this rule. As the INS granted Petitioners advance paroles in contradiction of its own policy and with full knowledge of the legal consequences of INA § 212(a)(9)(B)(i)(II)'s application, their argument concludes, the INS should be estopped from asserting Petitioners departed the United States.

A party asserting estoppel must establish: (1) "words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things," (2) "wilfulness or negligence with regard to the acts, conduct or acquiescence," and (3) "detrimental reliance by the other party upon the state of things so indicated." Tefel v. Reno, 180 F.3d 1286, 1302 (11th Cir. 1999) (citations omitted). Additionally, when asserting a claim of estoppel against the government, "the party . . . must prove, in addition to the traditional elements of estoppel, some affirmative misconduct by the government." Id. at 1303. The INS is under no duty to counsel applicants or parolees adequately on the potential legal consequences of their decisions. Balogun, 304 F.3d at 1312.

10

The IJ correctly rejected Petitioners' estoppel argument. Given the warnings they signed regarding the applicability and effect of INS § 212(a)(9)(B)(i), Petitioners could not reasonably have relied on the grant of advance parole as a guarantee that they would be admitted into the United States. Furthermore, they failed to establish any affirmative misconduct on the part of the INS.

We have examined carefully each of Petitioners' claims of error. None have merit.

**PETITION DENIED**.