NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0565n.06
Filed: August 7, 2006

No. 04-4246

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GONZALO TAPIA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE BOARD OF |
| ALBERTO R. GONZALES, | ) | IMMIGRATION APPEALS |
| Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before: GILMAN, SUTTON, and COOK, Circuit Judges.

COOK, Circuit Judge. Petitioner Gonzalo Tapia seeks review of a final Board of

Immigration Appeals (BIA) order affirming an Immigration Judge's (IJ) order of removal and denial

of a continuance motion. Tapia claims that the IJ erred in not granting him equitable relief or

allowing him to build a case in support of equitable relief based on the alleged wrongdoing of a

private "immigration consultant." Because the relief Tapia seeks is outside of the IJ's exclusively

legal jurisdiction, and because Tapia was otherwise removable, we deny the petition for review.

I.

Tapia—a native and citizen of Mexico—entered the United States without admission or

parole in May 1996 and remained unlawfully for some four years. Before that entry, Tapia's father,

a lawful permanent resident of the United States, had filed a petition for a relative visa for his son.

That petition was approved on December 9, 1992, and Tapia's priority date—the date that

establishes an applicant's priority for receiving a visa (not the date on which a visa is

received)—was set as September 10, 1992. Tapia had not yet received a relative visa by the time

of his entry.

In September 2000, Tapia met with Zoha Madarani, whom he wrongly believed to be an

attorney. On the basis of Madarani's advice, Tapia sought and later that month was granted

"advance parole" that was valid for multiple entries until September 2001. "Advance parole" is

government permission for certain aliens—including those with a pending application for adjustment

of nonimmigrant status and who do not have a valid immigrant visa—to be readmitted to the United

States after traveling abroad. The advance parole authorization form contained the following notice:

> NOTICE TO APPLICANT: Presentation of this authorization will permit you to
> resume your application for adjustment of status upon your return to the United
> States. If your adjustment application is denied, you will be subject to removal
> proceedings under section 235(b)(1) or 240 of the Act. *If, after April 1, 1997, you*
> *were unlawfully present in the United States for more than 180 days before applying*
> *for adjustment of status, you may be found inadmissible under section*
> *212(a)[(9)](B)(I) of the Act when you return to the United States to resume the*
> *processing of your application.* If you are found inadmissible, you will need to
> qualify for a waiver of inadmissibility in order for your adjustment of status
> application to be approved.

(Emphasis added.)

Believing that the advance parole would allow his reentry, Tapia spent two weeks in Mexico in April 2001 and returned to the United States. The INS briefly detained him at the border, and in July 2002, the INS commenced removal proceedings against him, charging him: (1) as an immigrant who was not in possession of a valid entry document at the time of his application for admission, and (2) as an alien who had been unlawfully present in the United States for a period of more than a year and sought admission within ten years of his departure.

On April 24, 2004, the IJ found against Tapia on both charges and ordered his removal. Because Tapia was without a valid entry document, the facts with respect to the first charge were clear. With respect to the second, the IJ concluded that "whether or not [Tapia] was entitled to the parole . . . [h]e received it, based upon accusations made and acted upon it, which places him in the category of an arriving alien." Tapia's attorney admitted that Tapia was unlawfully present in the United States from May 1996 until his departure to Mexico in April 2001, and the IJ thus determined that § 212(a)(9)(B)(i)(II) barred Tapia from seeking admission for 10 years from the time of his departure in 2001.

Tapia pursued various avenues of relief in the hearings preceding the IJ's orders of removal. In one hearing, Tapia claimed that he was the victim of an unscrupulous immigration consultant (Madarani) who improperly applied for Tapia's adjustment of status and advance parole before his priority date was current. On this basis, Tapia sought "not [to] be charged as an arriving alien and . . . [to] be given an opportunity to file an appropriate complaint with the appropriate authorities."

The IJ responded that it was a court of law, not of equity, and that it could not make any special dispensation to allow Tapia to pursue a complaint against Madarani. The IJ also noted that Tapia had not filed any sort of complaint regarding Madarani's conduct within the two years following his receipt of the Notice to Appear (on May 16, 2002) or within the year following the personal service of the Notice in court (on April 23, 2003).

In another hearing a month later, Tapia declined to apply for withholding of removal, (believing it would not be meritorious to do so) and attempted to introduce evidence to challenge the conduct of both Madarani and the government officials that served Tapia with the Notice to Appear. The IJ responded that the issuance of the Notice to Appear was within the prosecutors' discretion and that the IJ was a court of law, not of equity, and thus had no jurisdiction to award the equitable relief that Tapia sought. In particular, Tapia wanted to argue that his application for advance parole might have been granted by a corrupt immigration official working in cahoots with Madarani. Were this so, the IJ argued, this would only implicate the propriety of the Notice to Appear. The court refused to accept into evidence Tapia's submissions and refused to grant a continuance for Tapia's counsel to pursue a FOIA request against the government. Tapia's timely appeal of this decision was denied without opinion by the BIA in September 2004. The BIA denied his motion to reconsider two months later.

II.

When the BIA affirms the decision of the IJ without opinion, the IJ's decision becomes the final agency action for purposes of judicial review. *Rreshpja v. Gonzales*, 420 F.3d 551, 554 (6th Cir. 2005). We review the IJ's legal determinations de novo. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004).[1]

First, Tapia's underlying contention is that the government should be estopped from removing him because his advance parole authorization was procured by a private individual who falsely claimed to be a lawyer and who may have acted in cahoots with a government official. Tapia carries a difficult burden because the grounds for estoppel against the government, based upon individual misconduct, are few. *See Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 60 (1984) ("[T]he Government may not be estopped on the same terms as any other litigant."). To assert estoppel against the government, a party must point to some "affirmative misconduct." *Michigan Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004). Affirmative misconduct "is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant." *Elia v. Gonzales*, 431 F.3d 268, 276 (6th Cir. 2005) (quotation omitted). Tapia has failed to make this required showing. Tapia applied for the advance parole that he was granted, the advance parole authorization provided notice as to the consequences of leaving the United States,

---

[1]Tapia has not appealed the BIA's denial of his motion for reconsideration, and thus the panel has no jurisdiction to review that denial. *Andia v. Ashcroft*, 359 F.3d 1181, 1183 n.3 (9th Cir. 2004) ("[T]he BIA's denial of a motion to reconsider is a separate action that must be separately appealed for this court to have jurisdiction.").

and, in spite of the notice, he voluntarily left the United States. As the government correctly notes, "[t]he fact that he was given what he asked for does not and cannot create an estoppel against [the government]."

Second, he contends that the IJ abused her discretion and erred as a matter of law by refusing to accept testimony from Tapia's father, unspecified documentary evidence, and other interrogatories and depositions. But Tapia does not address the IJ's determination that all such evidence was either speculative or relevant only to equitable remedies, which the IJ had no authority to award. For example, Tapia's attorney admitted that "the only purpose for a deposition or a subpoena . . . [was] to review the determination of [Department of Homeland Security] to issue a charging document," a matter exclusively within the DHS's discretion. Because the suggested evidence was not relevant to the legal remedies that were within the IJ's jurisdiction, the IJ did not err in refusing to admit it.

Third, Tapia claims the government violated his due process rights when it refused to disclose whether a particular DHS employee had adjudicated Tapia's advance parole application, because, in his own words, "[t]he government has a duty to reveal favorable evidence pertaining to [him]." Tapia cites no authority for this proposition, but it is irrelevant anyway, because the information he seeks—relating to who processed his application—has no bearing upon the correctness of his deportation. Tapia further alleges that the withholding of the government agent's name undermined his ability to qualify for a U-visa, which is only available to victims of crimes.

As the government explains, however, an application for a U-visa must be accompanied by a certification from a law enforcement officer or investigating official that the alien "'has been helpful . . .' in the investigation or prosecution of criminal activity." Tapia had no such certification.

Fourth, Tapia argues incorrectly that he should be eligible for equitable relief and should be allowed to pursue a claim for ineffective assistance of counsel. Equitable relief is unavailable because the IJ's jurisdiction is purely legal and because both it and the BIA "are without authority to apply the doctrine of equitable estoppel against the [DHS]." *Matter of Hernandez-Puente*, 20 I. & N. Dec. 335, 338 (BIA 1991); *see Chang v. United States*, 327 F.3d 911, 924 (9th Cir. 2003)). Also, as the IJ noted, Madarani never represented Tapia at the immigration proceeding and, therefore, Tapia could not file an ineffective assistance of counsel claim against her.

Tapia's final argument is that the DHS violated his due process rights by processing his advance parole application prematurely. This argument fails because "the INS [here, the DHS] has no duty, constitutional or otherwise, to provide legal advice to aliens who petition the agency for a grant of advance parole." *Balogun v. U.S. Att'y. Gen.*, 304 F.3d 1303, 1312 (11th Cir. 2002). Tapia, of course, made the application himself. And it was only after he left the country without regard for the negative consequences that were specified on the second page of the advance parole authorization that he was harmed.

III.

Because Tapia has failed to articulate any cognizable claims to challenge the DHS's actions, and because the relief he seeks is outside of the IJ's jurisdiction, we deny the petition for review.