# CITY OF WEST COVINA *v.* PERKINS ET AL.

No. 97–1230.   Argued November 3, 1998—Decided January 13, 1999

*David D. Lawrence* argued the cause for petitioner. With him on the briefs was *Cindy S. Lee.*

*Jeffrey S. Sutton*, State Solicitor of Ohio, argued the cause for the State of Ohio et al. as *amici curiae* urging reversal. With him on the brief were *Betty D. Montgomery*, Attorney General of Ohio, *Elise W. Porter* and *Jeffrey B. Hartranft*, Assistant Attorneys General, and the Attorneys General for their respective jurisdictions as follows: *Bill Pryor* of Alabama, *Bruce M. Botelho* of Alaska, *Grant Woods* of Arizona, *Winston Bryant* of Arkansas, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Gus F. Diaz* of Guam, *Margery S. Bronster* of Hawaii, *Jeffrey A. Modisett* of Indiana, *Thomas J. Miller* of Iowa, *Carla J. Stovall* of Kansas, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.*, of Maryland, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Peter Verniero* of New Jersey, *Dennis C. Vacco* of New York, *Michael F. Easley* of North Carolina, *Heidi Heitkamp* of North Dakota, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Charles M. Condon* of South Carolina, *Mark W. Barnett* of South Dakota, *Jan Graham* of Utah, *Mark L. Earley* of Virginia, and *Christine O. Gregoire* of Washington.

*Patrick S. Smith* argued the cause and filed a brief for respondents.*

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Waxman*, *Deputy Solicitor General Dreeben*, and *Irving L. Gornstein*; for 62 named California Cities, Counties and Towns by *Julia Hayward Biggs* and *Rufus C. Young, Jr.*; and for the National League of Cities et al. by *Richard Ruda* and *Clifford M. Sloan.*

JUSTICE KENNEDY delivered the opinion of the Court.

We granted certiorari, 523 U. S. 1105 (1998), to consider in this case whether the Constitution requires a State or its local entities to give detailed and specific instructions or advice to owners who seek return of property lawfully seized but no longer needed for police investigation or criminal prosecution. Interpreting the Due Process Clause of the Fourteenth Amendment, the Court of Appeals for the Ninth Circuit imposed a series of specific notice requirements on the city responsible for the seizure. We conclude these requirements are not mandated by the Due Process Clause, and we reverse.

I

The case began when police officers of petitioner, the city of West Covina, California (City), acting in accordance with law and pursuant to a valid search warrant, seized personal property. The property belonged to the owner of the searched home, respondent Lawrence Perkins, and to his family. The suspect in the crime was neither Perkins nor anyone in his family, but one Marcus Marsh. Marsh had been a boarder in the Perkins' home. After leaving their home, and unknown to them, he became the subject of a homicide investigation.

During the search of respondents' home for evidence incriminating Marsh, the police seized a number of items, including photos of Marsh, an address book, a 12-gauge shotgun, a starter pistol, ammunition, and $2,629 in cash. 113 F. 3d 1004, 1006 (CA9 1997). At the conclusion of the search, the officers left respondents a form entitled "Search Warrant: Notice of Service," which stated:

"TO WHOM IT MAY CONCERN:

"1. THESE PREMISES HAVE BEEN SEARCHED BY PEACE OFFICERS OF THE (name of searching agency) *West Covina Police* DEPARTMENT PURSUANT TO A SEARCH WARRANT ISSUED ON (date)

*5–20–93*, BY THE HONORABLE (name of magistrate) *Dan Oki*, JUDGE OF THE SUPERIOR/MUNICIPAL COURT, *Citrus* JUDICIAL DISTRICT.
"2. THE SEARCH WAS CONDUCTED ON (date) *5–21–93*. A LIST OF THE PROPERTY SEIZED PURSUANT TO THE SEARCH WARRANT IS ATTACHED.
"3. IF YOU WISH FURTHER INFORMATION, YOU MAY CONTACT:
(name of investigator) *Det. Ferrari or Det. Melnyk* AT [telephone number].
"LT. SCHIMANSKI [telephone number]." App. 76–77 (italicized characters represent those portions of the original document which were handwritten on the form).

In accordance with the notice, the officers also left respondents an itemized list of the property seized. 113 F. 3d, at 1011–1012. The officers did not leave the search warrant number because the warrant was under seal to avoid compromising the ongoing investigation. *Id.*, at 1007. In a public index maintained by the court clerk, however, the issuance of the warrant was recorded by the address of the home searched and the search warrant number. *Ibid.*

Not long after the search, Perkins called Ferrari, one of the detectives listed on the notice, and inquired about return of the seized property. No. CV 93–7084 SVW (CD Cal., July 8, 1996), App. to Pet. for Cert. E3. One of the detectives told Perkins he needed to obtain a court order authorizing the property's return. *Ibid.*

About a month after the search, Perkins went to the Citrus Municipal Court to see Judge Oki, who had issued the warrant. He learned Judge Oki was on vacation. *Ibid.* He tried to have another judge release his property but was told the court had nothing under Perkins' name. *Ibid.*

Rather than continuing to pursue a court order releasing the property by filing a written motion with the court, mak-

ing other inquiries, or returning to the courthouse at some later date, *ibid.*, respondents filed suit in United States District Court against the City and the officers who conducted the search. They alleged the officers had violated their Fourth Amendment rights by conducting a search without probable cause and exceeding the scope of the warrant. App. 7–9. They further alleged that the City had a policy of permitting unlawful searches. *Id.*, at 10.

The District Court granted summary judgment for the City and its officers. App. to Pet. for Cert. B1–B11. The court, however, invited supplemental briefing on an issue respondents had not raised: whether available remedies for the return of seized property were adequate to satisfy due process. *Id.*, at B7. The parties submitted briefs on the issue, but the court did not rule on it. Respondents appealed the District Court's holding on their Fourth Amendment claims, but the Court of Appeals remanded the case to the District Court for resolution of the due process question. No. 94–56365 (CA9, Apr. 30, 1996), App. to Pet. for Cert. D1–D3.

The District Court held on remand that the remedies provided by California law for return of the seized property satisfied due process, and it granted summary judgment for the City. No. CV 93–7084 SVW, *supra*, App. to Pet. for Cert. E2. In particular, the court rejected respondents' claim that the procedure for return of their property was unavailable to them because the City did not give them adequate notice of the remedy and the information needed to invoke it. *Id.*, at E6.

On appeal, the Court of Appeals reversed the grant of summary judgment for the City. 113 F. 3d, at 1006. As an initial matter, the court noted that, under *Fuentes* v. *Shevin*, 407 U. S. 67 (1972), respondents were entitled only to an adequate postdeprivation remedy, and not to a predeprivation hearing prior to the seizure. 113 F. 3d, at 1010. The Court

of Appeals also agreed with the District Court that the post-deprivation remedies for return of property established by California statute and case law satisfied the requirements of due process. *Id.*, at 1011.

Nevertheless, the court held, by analogy to this Court's decision in *Memphis Light, Gas & Water Div.* v. *Craft*, 436 U. S. 1 (1978), that the City was required to give respondents notice of the state procedures for return of seized property and the information necessary to invoke those procedures (including the search warrant number or a method for obtaining the number). 113 F. 3d, at 1012. While acknowledging that it was not the court's place "to specify the exact phrasing of an adequate notice," the court proceeded to explicate, in some detail, the content of the required notice:

> "In cases where property is taken under California law . . . the notice should include the following: as on the present notice, the fact of the search, its date, and the searching agency; the date of the warrant, the issuing judge, and the court in which he or she serves; and the persons to be contacted for further information. In addition, the notice must inform the recipient of the procedure for contesting the seizure or retention of the property taken, along with any additional information required for initiating that procedure in the appropriate court. In circumstances such as those presented by this record, the notice must include the search warrant number or, if it is not available or the record is sealed, the means of identifying the court file. It also must explain the need for a written motion or request to the court stating why the property should be returned." *Id.*, at 1013.

This expansive requirement lacks support in our case law and mandates notice not now prescribed by the Federal Government or by any one of the 50 States.

## II

At this stage, no one contests the right of the State to have seized the property in the first instance or its ultimate obligation to return it. So rules restricting the substantive power of the State to take property are not implicated by this case. What is at issue is the obligation of the State to provide fair procedures to ensure return of the property when the State no longer has a lawful right to retain it.

Respondents acknowledge, as they must, that the City notified them of the initial seizure and gave them an inventory of the property taken. Accordingly, we need not decide how detailed the notice of the seizure must be or when the notice must be given. They also raise no independent challenge to the Court of Appeals' conclusion that California law provides adequate remedies for return of their property, including a motion under Cal. Penal Code Ann. § 1536 (West 1982) or a motion under § 1540. See 113 F. 3d, at 1011. Rather, they contend the City deprived them of due process by failing to provide them notice of their remedies and the factual information necessary to invoke the remedies under California law. When the police seize property for a criminal investigation, however, due process does not require them to provide the owner with notice of state-law remedies.

A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful. See *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 314 (1950) ("Th[e] right to be heard has little reality or worth unless one is informed that the matter [affecting one's property rights] is pending and can choose for himself whether to appear or default, acquiesce or contest"). It follows that when law enforcement agents seize property pursuant to warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return. Cf. *Schroeder* v. *City of New York*, 371 U. S. 208, 214 (1962) (requiring a city to provide adequate

notice of the deprivation—the city's condemnation of certain water rights—which created the property owner's right to pursue damages claims and triggered the statute of limitations on those claims). Individualized notice that the officers have taken the property is necessary in a case such as the one before us because the property owner would have no other reasonable means of ascertaining who was responsible for his loss.

No similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options. Cf. *Reetz* v. *Michigan,* 188 U. S. 505, 509 (1903) (holding that a statute fixing the time and place of meetings of a medical licensing board provided license applicants adequate notice of the procedure for obtaining a hearing on their applications because: "When a statute fixes the time and place of meeting of any board or tribunal, no special notice to parties interested is required. The statute is itself sufficient notice"); *Atkins* v. *Parker,* 472 U. S. 115, 131 (1985) (noting that "[t]he entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny"). In prior cases in which we have held that post-deprivation state-law remedies were sufficient to satisfy the demands of due process and the laws were public and available, we have not concluded that the State must provide further information about those procedures. See, *e. g., Hudson* v. *Palmer,* 468 U. S. 517 (1984).

*Memphis Light,* the case on which the Court of Appeals relied, is not to the contrary. In *Memphis Light,* the Court held that a public utility must make available to its customers the opportunity to discuss a billing dispute with a utility

employee who has authority to resolve the matter before ter-
minating utility service for nonpayment.   436 U. S., at 16–17.
The Court also held that due process required the utility
to inform the customer not only of the planned termination,
but also of the availability and general contours of the inter-
nal administrative procedure for resolving the accounting
dispute.   *Id.*, at 13–15.   In requiring notice of the adminis-
trative procedures, however, we relied not on any general
principle that the government must provide notice of the
procedures for protecting one's property interests but on the
fact that the administrative procedures at issue were not
described in any publicly available document.   A customer
who was informed that the utility planned to terminate his
service could not reasonably be expected to educate himself
about the procedures available to protect his interests:

> "[T]here is no indication in the record that a written
> account of [the utility's dispute resolution] procedure
> was accessible to customers who had complaints about
> their bills.   [The plaintiff's] case reveals that the oppor-
> tunity to invoke that procedure, if it existed at all, de-
> pended on the vagaries of 'word of mouth referral.'"
> *Id.*, at 14, n. 14.

While *Memphis Light* demonstrates that notice of the pro-
cedures for protecting one's property interests may be re-
quired when those procedures are arcane and are not set
forth in documents accessible to the public, it does not sup-
port a general rule that notice of remedies and procedures
is required.

The Court of Appeals' far-reaching notice requirement not
only lacks support in our precedent but also conflicts with
the well-established practice of the States and the Federal
Government.   The notice required by the Court of Appeals
far exceeds that which the States and the Federal Govern-
ment have traditionally required their law enforcement
agencies to provide.   Indeed, neither the Federal Govern-

ment nor any State requires officers to provide individual-
ized notice of the procedures for seeking return of seized
property. See Appendix, *infra*, p. 244.

Federal Rule of Criminal Procedure 41(d), for example, re-
quires federal agents seizing property pursuant to a warrant
to "give to the person from whom or from whose premises
the property was taken a copy of the warrant and a receipt
for the property taken or [to] leave the copy and receipt at
the place from which the property was taken." The Rule
makes no provision for notifying property owners of the pro-
cedures for seeking return of their property. The Court of
Appeals' analysis would render the notice required by this
Federal Rule—and by every analogous state statute—inade-
quate as a constitutional matter. In the shadow of this un-
wavering state and federal tradition, the Court of Appeals'
holding is all the more untenable; to sustain it, we would be
required to find that due process requires notice that not one
State or the Federal Government has seen fit to require, in
the context of law enforcement practices that have existed
for centuries.

Respondents urge that if we cannot uphold the Court of
Appeals' broad notice requirement, we should, at least, af-
firm the Court of Appeals' judgment on the narrower ground
that the notice provided respondents was inadequate because
it did not provide them with the factual information—spe-
cifically, the search warrant number—they needed to invoke
their judicial remedies. The District Court, however, made
an explicit factual finding that respondents failed to establish
that they needed the search warrant number to file a court
motion seeking return of their property:

> "Perkins argues that this [court] procedure was not
> available to him because he did not know the number of
> the warrant pursuant to which his property was seized.
> Unfortunately for Perkins, there is no evidence either
> way about whether one must have the warrant number
> in order to obtain a court order releasing seized prop-

erty.   Defendants assert that it is not necessary, that as long as the claimant can sufficiently identify the property he seeks (*i. e.*, by providing the date of the warrant, the name of the seizing agency and officer, and the identity of the issuing court and judge, all of which information was in Perkins' possession), the court will release it.   Plaintiffs want the Court simply to assume that if Perkins had filed a request with the court, it would have been denied because he did not have the warrant number.   But there is no evidence to support that speculation."   No. CV 93–7084 SVW, App. to Pet. for Cert. E6.

This finding undermines the factual predicate for respondents' alternative argument, and we need not discuss it further.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

## APPENDIX TO OPINION OF THE COURT

Federal and State Laws Governing Execution of Search Warrants and Procedures for Return of Seized Property

Fed. Rule Crim. Proc. 41(d); Ala. Code § 15–5–11 (1995); Ala. Rule Crim. Proc. 3.11 (1996); Alaska Stat. Ann. § 12.35.025 (1996); Alaska Rule Crim. Proc. 37 (1998); Ariz. Rev. Stat. Ann. §§ 13–3919 to 13–3922 (1989); Ark. Rule Crim. Proc. 13.3 (1998); Cal. Penal Code Ann. § 1535 (West 1982); Colo. Rev. Stat. § 16–3–305 (1997); Colo. Rule Crim. Proc. 41 (1997); Conn. Gen. Stat. Ann. §§ 54–33c, 54–36f (West Supp. 1998); Del. Ct. Common Pleas Rule Crim. Proc. 41 (1997); Del. Super. Ct. Rule Crim. Proc. 41 (1997); D. C. Code Ann. § 23–524 (1996); D. C. Super. Ct. Rule Crim. Proc. 41 (1998); Fla. Stat. Ann. § 933.11 (West Supp. 1998); Ga. Code Ann. §§ 17–5–25, 17–5–29 (1990); Haw. Rule Penal Proc.

41 (1997); Idaho Code §§ 19–4413, 19–4415, 19–4416 (1997); Idaho Rule Crim. Proc. 41 (1998); Ill. Comp. Stat. Ann., ch. 725, §§ 5/108–6, 5/108–10 (West 1992); Ind. Code Ann. §§ 35–33–5–2 to 35–33–5–7 (West 1998); Iowa Code Ann. § 808.8 (West 1994); Kan. Stat. Ann. §§ 22–2506, 22–2512 (1988 and Supp. 1997); Ky. Rule Crim. Proc. 13.10 (1993); La. Code Crim. Proc. Ann., Art. 166 (West 1991); Me. Rule Crim. Proc. 41 (1998); Md. Rule Crim. Proc. 4–601 (1997); Mass. Ann. Laws, ch. 276, §§ 1 to 4 (Law Co-op. 1992 ed. and Supp. 1998); Mich. Comp. Laws Ann. § 780.655 (West 1998); Minn. Stat. Ann. §§ 626.16, 626.17 (West Supp. 1998); Miss. Code Ann. § 41–29–157(a)(3) (1981), § 99–27–15 (1994); Mo. Ann. Stat. § 542.291 (Vernon Supp. 1998); Mont. Code Ann. §§ 46–5–227, 46–5–301 (1997); Neb. Rev. Stat. § 29–815 (1995); Nev. Rev. Stat. Ann. § 179.075 (Michie 1997); N. H. Rev. Stat. Ann. § 595–A:5 (1986); N. J. Stat. Ann. § 33:1–61 (West 1994); N. J. Rule Crim. Prac. 3:5–5 (1998); N. M. Dist. Ct. Rule Crim. Proc. § 5–211 (1996); N. M. Magis. Ct. Rule Crim. Proc. § 6.208 (1996); N. Y. Crim. Proc. Law § 690.50 (McKinney 1995); N. C. Gen. Stat. §§ 15A–252, 15A–254 (1997); N. D. Rule Crim. Proc. 41 (Supp. 1987); Ohio Rev. Code Ann. § 2933.241 (1997); Ohio Rule Crim. Proc. 41 (1994); Okla. Stat. Ann., Tit. 22, §§ 1232 to 1234 (West 1986 ed. and Supp. 1998); Ore. Rev. Stat. §§ 133.575, 133.595 (1991); Pa. Rules Crim. Proc. 2008, 2009 (1998); R. I. Super. Ct. Rule Crim. Proc. 41 (1998); S. C. Code Ann. § 17–13–150 (1985); S. D. Codified Laws § 23A–35–10 (Rule 41(d)) (1998); Tenn. Rule Crim. Proc. 41 (1998); Tex. Code Crim. Proc. Ann. § 18.06 (Vernon 1977 ed. and Supp. 1997); Utah Code Ann. § 77–23–206 (1995); Vt. Rule Crim. Proc. 41 (1993 and Supp. 1998); Va. Code Ann. § 19.2–57 (Michie 1995); Wash. Super. Ct. Rule Crim. Proc. 2.3 (1996); W. Va. Code § 62–1A–4 (1997); W. Va. Rule Crim. Proc. 41 (1997); Wis. Stat. Ann. § 968.17 (West 1985); Wyo. Stat. Ann. § 7–7–102 (Michie 1997); Wyo. Rule Crim. Proc. 41 (1998).

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, concurring in the judgment.

I agree with the holding of the majority's opinion, *ante*, at 240, that the Due Process Clause does not compel the city to provide respondents with detailed notice of state-law post-deprivation remedies. I write separately, however, because I cannot endorse the suggestion, in dicta, that "when law enforcement agents seize property pursuant to warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." *Ibid.* In my view, the majority's conclusion represents an unwarranted extension of procedural due process principles developed in civil cases into an area of law that has heretofore been governed exclusively by the Fourth Amendment.

As far as I am aware, we have never before suggested that procedural due process governs the execution of a criminal search warrant. Indeed, we have assumed that "[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases . . . ." *Gerstein v. Pugh,* 420 U. S. 103, 125, n. 27 (1975). In my view, if the Constitution imposes a "notice" requirement on officers executing a search warrant, it does so because the failure to provide such notice renders an otherwise-lawful search "unreasonable" under the Fourth Amendment.[1]

---

[1] Although we have never addressed the issue, there is near unanimous agreement among the lower courts that the notice requirements imposed by Federal Rule of Criminal Procedure 41(d) and the state statutes cited in the Appendix to the majority's opinion, *ante,* at 244–245, are not required by the Fourth Amendment. See W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.12 (3d ed. 1996).

We have previously suggested that the procedure for executing the common-law warrant for stolen goods "furnished the model for a 'reasonable' search under the Fourth Amendment." *Id.*, at 116, n. 17. At common law, officers executing a warrant for stolen goods were required to furnish an inventory of property seized. T. Taylor, Two Studies in Constitutional Interpretation 82 (1969); see also 2 W. Hawkins, Pleas of the Crown 137 (6th ed. 1787) ("The officer executing such warrant, if required, shall shew the same to the person whose goods and chattels are distrained, and shall suffer a copy thereof to be taken"). Furthermore, the failure to adhere to this procedure was denounced in *Wilkes* v. *Wood*, Lofft 1, 98 Eng. Rep. 489 (K. B. 1763), and *Entick* v. *Carrington*, 19 How. St. Tr. 1029 (C. P. 1765), two celebrated cases that profoundly influenced the Founders' view of what a "reasonable" search entailed.[2] In both cases, Lord Camden criticized the fact that the officers executing the general warrants were not constrained by the safeguards built up around the warrant for stolen goods. He specifically complained that the officers did not provide an inventory of the property seized.[3]

In light of this historical evidence, I would be open to considering, in an appropriate case, whether the Fourth Amend-

[2] See, *e. g.*, T. Taylor, Two Studies in Constitutional Interpretation 39–41 (1969); Amar, Fourth Amendment First Principles, 107 Harv. L. Rev. 757, 775 (1994); Stuntz, Substantive Origins of Criminal Procedure, 105 Yale L. J. 393, 400 (1995).

[3] See *Entick*, 19 How. St. Tr., at 1067 ("[T]he same law which has with so much circumspection guarded the case of stolen goods from mischief, would likewise in this case protect the subject, by adding proper checks; . . . would require him to take an exact inventory, and deliver a copy . . . . [W]ant of [these safeguards] is an undeniable argument against the legality of the thing"); *Wilkes*, Lofft, at 19, 98 Eng. Rep., at 499 ("As to the proof of what papers were taken away, the plaintiff could have no account of them; and those who were able to have given an account . . . have produced none").

ment mandates the notice requirement adopted by the majority today. See *Wilson* v. *Arkansas*, 514 U. S. 927 (1995) (relying on common-law antecedents to define a "reasonable search"). I am unwilling, however, to endorse the majority's ahistorical reliance on procedural due process as the source of the requirement. I therefore concur in the judgment.