Bart DIDDEN, Domenick Bologna, Fred DeCesare, Cabernet 119 Realty Corp., Opus 113 Corp., Pauillace 115 Realty Corp., 117 North Main Street Corp., Plaintiffs,

v.

The VILLAGE OF PORT CHESTER, the Board of Trustees for the Village of Port Chester, Gerald Logan, individually and in his official capacity as Village Trustee for the Village of Port Chester, Daniel Colangelo, Jr., individually and in his official capacity as Village Trustee for the Village of Port Chester, John M. Crane, individually and in his official capacity as Village Trustee for the Village of Port Chester, Gerard Diroberto, individually and in his official capacity as Village Trustee for the Village of Port Chester, Anthony Napoli, individually and in his official capacity as Village Trustee for the Village of Port Chester, Robert Sorensen, individually and in his official capacity as Village Trustee for the Village of Port Chester, G & S Port Chester, LLC. and Gregory Wasser, Defendants.

No. 04 CIV.0370 CM.

United States District Court, S.D. New York.

May 24, 2004.

See also 304 F.Supp.2d 548.

Richard L. O'Rourke, Edward J. Phillips, Keane and Beane P.C., White Plains, NY, for Plaintiffs.

John Ernest Watkins, Jr., Law Office of John E. Watkins, Stuart Evan Kahan, Oxman Tulis Kirkpatrick Whyatt & Geiger, LLP, Alan David Scheinkman, DelBello Donnellan Weingarten Tartaglia Wise & Wiederkehr, L., White Plains, NY, for Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

MCMAHON, District Judge.

In this action, Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted.

This case arises out of a dispute between private developers over a development project (the "Project") associated with the Village of Port Chester's ("Port Chester") redevelopment of twenty-seven acres of its downtown and waterfront areas. I will assume familiarity with the facts of this case, which are explained in detail in *Didden v. Village of Port Chester*, 304 F.Supp.2d 548 (S.D.N.Y.2003) ("*Didden I*").

On January 16, 2004, Plaintiffs filed a complaint and an order to show cause with this Court, seeking temporary and preliminary injunctive relief that would stay the Condemnation Proceeding, as well as declaratory and monetary relief pursuant to 42 U.S.C. § 1983 against Port Chester and its Board of Trustees (the "Public Defendants") and Private Defendants. I denied Plaintiffs' motion for a preliminary injunction on *Younger* grounds, and because I found that Plaintiffs could not establish a likelihood of success on the merits. I granted Defendants leave to move for dismissal, which they did on February 6, 2004.

On March 3, 2004, Plaintiffs filed an Amended Complaint. The Amended Complaint contains two additional facts: first, that Plaintiffs own or control an assemblage of adjoining properties in Port Chester (the "Subject Properties") that are situated within an urban renewal district known as MUR Marina Redevelopment Project Urban Renewal District (the "MUR District") (Am.Compl.¶¶ 26, 29, 36); and second, that Plaintiffs additionally own or control four adjoining properties that are situated outside the MUR District (*Id.* ¶¶ 33, 37). More importantly, the Amended Complaint contains two additional substantive allegations. First, it alleges that Plaintiffs had no notice that, under New York Eminent Domain Procedure Law ("EDPL"), they had only thirty days to challenge in a judicial proceeding the July 14, 1999 findings by the Port Chester Board of Trustees (the "Board") that the condemnation had a public purpose (*Id.* ¶ 31). Second, it alleges that on February 23, 2004, the Village of Port Chester Planning Commission (the "Planning Commis-

sion") granted Plaintiffs final site plan approval to proceed with the Project; it had only granted preliminary approval before then (*Id.* ¶ 45). Finally, the Amended Complaint elaborates upon certain allegations made in the initial pleading, alleging that Defendant Wassler estimated that redevelopment of the Subject Properties as a retail pharmacy use would yield approximately $2,000,000 in profits for the developers who successfully completed such a project, and that he relied solely upon this estimate in formulating his demand that Plaintiffs buy him out for $800,000 (*Id.* ¶ 49).

After reviewing the parties' papers, I now dismiss Plaintiffs' complaint for the reasons discussed in *Didden I* and *Paul v. New York State Dep't of Motor Vehicles*, No. 02 Civ. 8839(AKH), 2003 WL 253065 (S.D.N.Y. Feb. 3, 2003) (Complaint dismissed because a state administrative proceeding was pending), as well as for the following reasons.

## A. Standard for Motion to Dismiss.

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper only where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). The test is not whether a plaintiff is ultimately likely to prevail, but whether the claimant is entitled to offer evidence to support the claims. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998). The factual allegations in the complaint are presumed to be true, and all reasonable inferences are drawn in the plaintiffs' favor. *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144 (2d Cir.2000).

## B. Statute of Limitations.

■ In *Didden I*, I held that all of Plaintiffs' claims, which assert that the Project lacks a public purpose or that the LADA improperly invoked Port Chester's eminent domain power relating to public purpose, are time-barred. Plaintiffs, in their Memorandum of Law in Opposition to Defendants' Motion to Dismiss, do not contest that the three-year statute of limitations governing general personal injury actions applies to 42 U.S.C. § 1983 claims brought within New York State. *Owens v. Okure*, 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Brandman v. N. Shore Guidance Ctr.*, 636 F.Supp. 877 (E.D.N.Y.1986). They also do not contest that while state law provides the limitations period, the issue of when the federal cause of action accrued is a matter of federal law. *Fiesel v. Bd. of Educ. of N.Y.*, 675 F.2d 522, 524 (2d Cir.1982). As stated in my previous opinion, under federal law, a cause of action under § 1983 accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Barrett v. U.S.*, 689 F.2d 324, 333 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366.

■ As I held in *Didden I*, the statute of limitations began to run on July 14, 1999, once Port Chester authorized a land disposition agreement with G & S, which covered the use of eminent domain incidental to the implementation of the redevelopment Project, and it was found that there was a legitimate public purpose for condemnation. *Didden*, at 564. Plaintiffs, however, assert that they did not suffer any injury until November 5, 2003, when G & S and Wasser allegedly attempted to exact a cash payment from them. Plaintiffs claim that they "could not have envisioned that the Private Defendants could engage in such conduct in March 1999." This argument does not save Plaintiffs' claim from being time-barred.

The March 30, 1999 letter from Plaintiffs to the Board shows that Plaintiffs were fully aware that a finding of public purpose would expose their property to the prospect of condemnation. They even expressed concern that the consequences of Port Chester entering into the LADA with the Private Defendants would mean that they would not have a "level playing field" from which to negotiate with G & S, and that G & S would have leverage because of its option to condemn the property of "those property owners with whom they are unable to finalize a deal." Consequently, Plaintiffs were able to, and did in fact, contemplate Port Chester's actions in 1999. This action was commenced on January 16, 2004, nearly five years after Plaintiffs sent their March 30, 1999 letter, and well over four years after Post Chester issued a public purpose finding and decided to enter into a land disposition agreement with G & S. Therefore, I find that all of Plaintiffs' claims are time-barred.

## C. Unconstitutional Exactions.

Plaintiffs also make a new argument, trying to analogize this case to a line of cases concerning public exactions. The law permits the government to put conditions on the grant of land use permits so long as the conditions have an essential nexus with legitimate public interests. *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) (municipality conditioned permit to expand seaside home on public easement across property to reach public beaches); *see also Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (municipality conditioned building permit on land owner's setting aside property for a storm drainage system and a public park). Plaintiffs claim that Defendants' threat to use their eminent domain power to condemn the Subject Properties unless Plaintiffs gave them either $800,000 or a part-

nership interest in the business on the property amounts to an unconstitutional exaction.

No exaction has occurred here. Plaintiffs have not had any conditions placed upon their property during their ownership that limit their ability to use their property. The exaction cases, therefore, have no relevance to the case at bar. There was a preexisting EDPL finding of "public purpose" under Article 2 that went unchallenged by Plaintiffs. It was not until November 2003 that Plaintiffs made any application for municipal land use approvals, and, when they did so, they knew that their property was subject to ongoing condemnation efforts. Since Plaintiffs concede that the July 1999 findings are unchallenged and that their property was appropriately placed in the condemnation zone, the constitutional public purpose requirement has been met. Plaintiffs have no additional substantive rights other than to receive just compensation from Port Chester pursuant to Articles 3, 4, and 5 of the EDPL.

## D. Plaintiffs Have Waived Their Right to Challenge the Public Purpose of the Redevelopment Project.

Plaintiffs allege that they "neither received nor had any notice" that the EDPL Section 207 afforded them only thirty days to bring a judicial challenge after the newspaper publication of the Board's July 14, 1999 findings. It is too late for Plaintiffs to challenge those findings now.

In prior litigation relating to this project, the Second Circuit has addressed this issue, but held that a condemnee can assert a procedural Due Process claim only when he has been "denied notice of the publication of the determination and findings and an opportunity to appeal." *Brody v. Village of Port Chester*, 345 F.3d 103, 113 (2d Cir.2003). Plaintiffs, however, do

not claim that they lacked notice of the Article 2 findings; indeed, they concede that they received notice of the public hearing held on July 14, 1999. Nor do they contest that they had an opportunity to appeal. They simply allege that they had no knowledge of the thirty-day time limit to challenge the findings, and consequently they are not within the scope of *Brody.*

■ Furthermore, Plaintiffs are chargeable with the knowledge of rules and regulations duly adopted pursuant to and under the authority of law. *Flamm v. Ribicoff,* 203 F.Supp. 507 (S.D.N.Y.1961). The Supreme Court has long held that "[a]ll persons charged with knowledge of the provisions of statutes must take note of the procedure adopted by them." *N. Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283, 45 S.Ct. 491, 69 L.Ed. 953 (1925). Plaintiffs were fully aware of the consequences of the condemnation findings, as their March 30, 1999 letter to the Board demonstrates. They also had notice of the public hearings that preceded the findings. Since Plaintiffs were on notice of the process and its consequences, they had an obligation to exercise due diligence to ascertain the status of the condemnation proceedings:

> It is well established that due process is not offended by requiring a person with actual timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right. *GAC Enterprises, Inc. v. Medaglia,* 52 F.3d 451, 455 (2d Cir. 1995).

Neither the federal nor state government is required to give individuals notice of the procedures affecting an individual's property rights. *City of W. Covina v. Perkins,* 525 U.S. 234, 243, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999).

### E. Extortionate Demand for Payment.

■ Plaintiffs claim that Defendant Wasser demanded that they pay him the sum of $800,000 or else he would cause Port Chester to condemn the Subject Properties and thereby divest Plaintiffs of title. However, their allegation of an extortionate demand of $800,000 to avoid condemnation adds nothing of legal significance to Plaintiffs' claims. As Plaintiffs themselves assert in their Complaint, G & S and Wasser have the authority under the LADA to obligate Port Chester to pursue condemnation of properties within the Project's boundaries. (Scheinkman Aff., Ex. A, ¶ 62). Threats to enforce a party's legal rights are not actionable. *DiRose v. PK Mgmt. Corp.,* 691 F.2d 628, 633 (2d Cir. 1982). Thus, even if Defendants did request payment in exchange for relinquishing the legal right to request condemnation, Plaintiffs have no recourse.

■ The EDPL does not require the condemner to negotiate with a private property owner in good faith prior to seeking to acquire title to the property. *Nat'l Fuel Gas Supply Corp. v. Town of Concord,* 299 A.D.2d 898, 752 N.Y.S.2d 187 (4th Dep't 2002). That Port Chester, G & S, and Wasser did meet with Plaintiffs and conveyed a proposal that Plaintiffs found unacceptable does not give Plaintiffs any substantive claims. Plaintiffs pursued their CVS site plan application and the CVS lease knowing that the Private Developers, under the LADA, might attempt to buy or condemn the disputed properties.

### F. Unlawful Delegation.

■ Plaintiffs also allege that at some point during their course of dealing, the Public and Private Defendants dispensed with many of the LADA's provisions concerning Defendant G & S's obligations to provide notices to Port Chester and to fund certain escrow accounts timely. As-

suming that this is true for the purposes of the motion to dismiss, Plaintiffs are not parties to the LADA and lack standing to assert any claims under the LADA.

For the reasons set forth above and in my earlier decision, Defendants' motion to dismiss is granted.