**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHAD BOCK, a single man; NATHAN BOCK,

*Plaintiffs-Appellants*,

v.

STATE OF WASHINGTON; WASHINGTON DEPARTMENT OF FISH AND WILDLIFE; JOLYNN BEAUCHENE, WDFW Officer; MIKE SPRECHER, WDFW Sargent; DAN RAHN, WDFW Captain; JESSE JONES,

*Defendants-Appellees.*

No. 21-35182

D.C. No.
2:19-cv-00308-
SAB

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Stanley A. Bastian, Chief District Judge, Presiding

Argued and Submitted December 9, 2021
Seattle, Washington

Filed May 9, 2022

Before:  M. Margaret McKeown and Bridget S. Bade,
Circuit Judges, and Sidney A. Fitzwater,[*] District Judge.

Opinion by Judge McKeown

---

**SUMMARY**[**]

---

**Civil Rights**

The panel dismissed a due process claim as moot and affirmed the district court's entry of judgment with respect to the constitutionality of Washington State's forfeiture statute in an action arising from unlawful hunting in British Columbia that led authorities in Washington to seize almost $200,000 worth of wildlife and animal parts from plaintiffs and to charge them with illegal possession of these parts.

After the Spokane County prosecutor filed charges against plaintiffs pursuant to Wash. Rev. Code § 77.15.265, plaintiffs entered into a Stipulation to Police Reports and Order of Continuance ("SOC"), which provided that the charges would be dismissed if plaintiffs complied with certain terms, including waiving the right to contest the evidence against them.  Under Washington's wildlife forfeiture statute, the entry of an SOC also resulted in the forfeiture of the wildlife and animal parts at issue.  Plaintiffs successfully completed their SOCs, and the charges against

---

[*] The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

them were dismissed. They brought suit alleging that the forfeiture and transfer of their property to Canada, without notice or a hearing, functionally destroyed their property interests, thus depriving them of due process. The district court rejected plaintiffs' arguments that the automatic forfeiture statute was unconstitutional as applied to wildlife taken outside of Washington or that the statute unconstitutionally deprived plaintiffs of property without notice of a hearing.

The panel held that because plaintiffs signed the SOCs, which triggered the automatic forfeiture, their suit for recovery of the forfeited property was moot. To the extent plaintiffs' constitutional claims hinged on their argument that the seized property was not contraband, these claims were also mooted by the plaintiffs' agreement to forfeiture. In the alternative, plaintiffs' suit would also fail on standing grounds. Even if plaintiffs had a property interest in the seized wildlife parts protected by the Fourteenth Amendment at the time the parts were transferred, they gave up that interest by agreeing to the ultimate forfeiture of the items to the state; plaintiffs therefore could not maintain a concrete injury as a result of the transfer to British Columbia.

The panel rejected plaintiffs' argument that Washington's wildlife forfeiture statute was unconstitutional. The panel concluded that, while the existence of a state law authorizing a seizure does not immunize that seizure from constitutional scrutiny, plaintiffs were estopped from raising this argument. In signing the SOCs, plaintiffs agreed to the statutorily mandated consequence of forfeiture of the seized materials, pursuant to Wash. Rev. Code § 77.15.100(3).

**COUNSEL**

Breean L. Beggs (argued), Paukert & Troppmann PLLC, Spokane, Washington; Morgan C. Maxey and Mark J. Harris, Maxey Law Offices PLLC, Spokane, Washington; for Plaintiffs-Appellants.

Alicia Orlena Young (argued) and Katie Merrill, Assistant Attorneys General; Robert W. Ferguson, Attorney General; Office of the Attorney General, Olympia, Washington; for Defendants-Appellees State of Washington, Washington Department of Fish and Wildlife, Jolynn Beauchene, Mike Sprecher, and Dan Rahn.

Paul Gill, HPG PLLC, Seattle, Washington, for Defendant-Appellee Jesse Jones.

**OPINION**

McKEOWN, Circuit Judge:

This case arises from unlawful hunting in British Columbia that led authorities in Washington State to seize almost $200,000 worth of wildlife and animal parts from two Washington residents and charge them with illegal possession of these parts. The Washington authorities transferred this property to their counterparts in British Columbia. The putative property owners claim that this transfer functionally destroyed their property interests, thus depriving them of due process. Although this scenario presents an issue of first impression, we dismiss this portion of the claim because it is moot. We also affirm the district court's entry of judgment with respect to the constitutionality of Washington's forfeiture statute.

## BACKGROUND

Two brothers—Chad Bock ("Chad") and Nathan Bock ("Nathan") (collectively "the Bocks"), United States citizens and residents of Washington State—became embroiled in a dispute with the authorities of Washington and British Columbia. In October 2014, British Columbia Conservation Officer Jesse Jones stopped the Bocks for a wildlife inspection, after observing moose antlers displayed in their vehicle. During this inspection, Nathan presented a British Columbia resident hunter license, and Chad presented a British Columbia non-resident accompanied hunt permit (obtained for him by Nathan). Officer Jones ultimately issued the Bocks warnings for failure to leave evidence of gender attached to the meat.

But Officer Jones was suspicious of Nathan's resident hunter status and so commenced an investigation. The investigation revealed that, to obtain the relevant hunting number, licenses, permits, and tags, Nathan had used non-existent or inaccurate residences and addresses. In 2016, Officer Jones shared the results of his investigation with the Washington Department of Fish and Wildlife ("the Department"), which launched its own investigation into the Bocks and ultimately assigned the inquiry to Officer JoLynn Beauchene. Officer Beauchene discovered that Nathan and Chad had unlawfully imported multiple animals by failing to properly document or disclose them at the border, and by not having the proper permit.

Based on these findings, Officer Beauchene obtained search warrants for the Bocks' individual residences in Spokane County, Washington. Accompanied by her colleagues, Officer Beauchene seized as evidence numerous items from the residences, including hunting trophies, animal meat, and taxidermized animals. Following the

seizure, Officer Jones—who was present during the seizure at the invitation of the Department—identified the wildlife and animal parts that had been taken in Canada.

Days later, and with the permission of the U.S. Fish & Wildlife Service as well as her superiors in the Department, Officer Beauchene transferred these wildlife and animal parts to Officer Jones in British Columbia. As the district court summarized, "[t]his transfer served a twofold purpose: (1) storage (i.e., because British Columbia had larger facilities to accommodate the seized items) and (2) potential use as evidence (i.e., because it seemed likely that British Columbia would be the first to refer the investigation for prosecution)." The Department also transferred documents and electronic storage devices seized from the Bocks' residences to British Columbia, although these were returned to the Department months later, after British Columbia failed to file charges against the Bocks before the statute of limitations had run. The Bocks claim that they received no notice of the transfer of their property to Canada (either from Washington or British Columbia officials).

In 2018, the Spokane County prosecutor filed charges against Chad and Nathan for violating Wash. Rev. Code § 77.15.265, which forbids the possession of wildlife that the defendant knows was taken in another country in violation of that country's laws or regulations relating to matters such as licenses or tags. Nathan and Chad each entered into a Stipulation to Police Reports and Order of Continuance ("SOC"), which continued their cases in pre-trial status for one year, after which the prosecutor would dismiss the charges if the Bocks complied with certain terms of the agreements.

In the SOCs, the Bocks waived a number of rights, including the right to contest the evidence against them.

Under the statute, the entry of an SOC also results in the forfeiture of the wildlife and animal parts at issue. *Id.* § 77.15.100(3) (2018) (wildlife taken or possessed in violation of state law "*shall* be forfeited to the state" when "a person voluntarily enters into a disposition that continues or defers the case for dismissal upon the successful completion of specific terms or conditions") (emphasis added).

The Bocks successfully completed their SOCs, and the charges against them were dismissed in October 2019. Several months before this dismissal, however, they filed suit against the Department, the State of Washington, Officer Beauchene, two of her superiors, and Officer Jones (collectively "the Officials"). Their claims all centered on the Department's transfer of the wildlife and animal parts to the Canadian authorities. The claims included violation of the Fourth, Fifth,[1] and Eighth Amendments; supervisory liability; civil conspiracy; a writ of replevin; a return of property; and, in an amended complaint, state law claims for tortious conversion and negligence/tortious conduct. The Bocks sought a variety of forms of relief, including compensatory, special, punitive, and exemplary damages; attorney's fees and costs; and the return of all property seized from their residences. The estimated value of the wildlife and animal parts is at least $192,000.

Shortly after the case was properly removed to federal court, the Bocks completed their SOCs and the charges against them were dismissed. The Officials have aptly noted that the Bocks brought suit rather than "withdraw their SOCs and contest the statutorily mandated forfeiture." The

---

[1] The Bocks' appellate briefs invoke the Fourteenth, rather the Fifth, Amendment.

Officials argued that the Bocks should be estopped from bringing their claims, as their decision to voluntarily enter into the SOC waived their right to challenge the automatic forfeiture of the wildlife and animal parts—and, further, the Washington statute and its application to the Bocks were constitutional. In response, the Bocks made two constitutional arguments. First, they claimed that the Washington statute is unconstitutional when applied to wildlife taken outside of Washington (and, further, that when the Department transferred the wildlife and animal parts to British Columbia, the parts ceased to be evidence and thus subject to automatic forfeiture). Second, they claimed that, by transferring the wildlife and animal parts to British Columbia, the Department unconstitutionally deprived the Bocks of property without notice or a hearing *and* unconstitutionally deprived them of a remedy by divesting the state court of *in rem* jurisdiction over the parts.

On cross-motions for summary judgment, the district court granted the Officials' motion and denied the Bocks' motion. The district court noted that Washington law "explicitly makes it a state law crime to take wildlife from another country in violation of that country's laws," rejecting the Bocks' argument that the automatic forfeiture statute is unconstitutional as applied to wildlife taken outside of Washington. The district court likewise rejected the argument that the automatic forfeiture statute unconstitutionally deprived them of property without notice or a hearing, noting that automatic forfeiture "only kicks in if the party enters into an SOC." The district court further reasoned that, if the party chooses to go forward with the prosecution, they do not waive their rights and they retain the opportunity for notice, hearing, determination of guilt, and return of the seized evidence. The district court noted that the Bocks, with the advice of counsel, signed the SOCs,

the completion of which triggered the forfeiture.  Because the district court could "dispose of the motion on the grounds of automatic forfeiture," it did not "find it necessary to address the parties' other arguments."  As a result, the district court entered judgment in favor of the Officials.

## ANALYSIS

## I. MOOTNESS

The first issue before us is whether the Officials abrogated the Bocks' due process rights by transferring the wildlife and animal parts to British Columbia in 2016, without notice or a hearing.  We conclude that the Bocks' challenge is moot and therefore do not address the merits of their argument.  *See W. Addition Cmty. Org. v. Alioto*, 514 F.2d 542, 544 n.2 (9th Cir. 1975) (stating that "we are obligated to consider the question of mootness" because a "finding of mootness . . . deprive[s] our court of jurisdiction, there no longer being an actual case or controversy" (internal quotation marks omitted)).

The Fourteenth Amendment provides that a state cannot "deprive any person of … property[] without due process of law."  U.S. Const. amend. XIV.  "[O]ne of due process's central and undisputed guarantees is that, before the government permanently deprives a person of a property interest, that person will receive—at a minimum—notice." *Wright v. Beck*, 981 F.3d 719, 727 (9th Cir. 2020).  Even if the state has seized a person's property in full accordance with the law, it cannot "destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982)).

The inquiry here is whether Washington's 2016 transfer of the wildlife and animal parts to Canada violated the Bocks' due process rights. This question—whether the transfer of property outside of U.S. jurisdiction, without notice and while the legal ownership of that property is still in dispute, abrogates due process—is a matter of first impression in this circuit. The Bocks maintain that the transfer itself was equivalent to the *destruction* of their property interest because the state placed the wildlife and animal parts beyond the jurisdiction of the Washington courts. That is, because the Washington authorities cannot *guarantee* the return of the property from Canada, the Bocks' property interest was functionally extinguished.

Nonetheless, this argument must fall on mootness grounds. "In general a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (internal quotation marks omitted). We have held that where a "stipulation had the effect of disposing of all" of the property at issue, the claims for a return of property or seized assets are moot. *United States v. Pemberton*, 852 F.2d 1241, 1243 (9th Cir. 1988) (per curiam). The court in *Pemberton* concluded that "when Pemberton agreed to forfeiture, he relinquished his claim for a release of assets" from the forfeited funds. *Id*. (citing *United States v. Fischer*, 833 F.2d 647, 648–49 (7th Cir. 1987)). Likewise, because the Bocks signed the SOCs, which triggered the automatic forfeiture, their suit for recovery of the forfeited property is moot. To the extent the Bocks' constitutional claims hinge on their argument that the seized property was not contraband, these claims are also mooted by the Bocks' agreement to forfeiture. *See United States v. Rutledge*, 448 F.3d 1080, 1081 (9th Cir. 2006) (dismissing appeal as moot and withdrawing opinion

because a ruling that assets "were not subject to criminal forfeiture" "addressed a controversy between the parties that no longer existed" after the parties entered into an intervening plea agreement).

In the alternative, the Bocks' suit would also fall on standing grounds. The Bocks assert a risk of future harm (i.e., if they vindicate their property rights, the Washington authorities might not be able to get the property back from Canada), yet the Supreme Court is clear that where a risk of future harm has not yet materialized, the "plaintiffs' argument for standing for their damages claims based on an asserted risk of future harm is unavailing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021). Even if the Bocks had a property interest in the seized wildlife parts protected by the Fourteenth Amendment at the time the parts were transferred, the Bocks gave up that interest by agreeing to the ultimate forfeiture of the items to the state; the Bocks therefore cannot maintain a concrete injury as a result of the transfer to British Columbia. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (holding that a "bare procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III").

## II. JUDICIAL ESTOPPEL

The Bocks also argue that Washington's wildlife forfeiture statute, Wash. Rev. Code § 77.15.100(3), is unconstitutional on its face and as applied against them. We conclude that, while the existence of a state law authorizing a seizure does not immunize that seizure from constitutional scrutiny, *see Sibron v. New York*, 392 U.S. 40, 61 (1968), the Bocks are estopped from raising this argument.

When "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he

may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted). The Supreme Court has identified three non-exclusive factors that should "inform" a court's decision to apply judicial estoppel: (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) "the party has succeeded in persuading a court to accept that party's earlier position," such that judicial acceptance of an inconsistent position would create the perception that one court was misled; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. at 750–51 (internal quotation marks and citations omitted).

Per their SOCs, the Bocks were charged with "unlawful possession of wildlife in violation of another country's or state's laws." Successful completion of the SOC resulted in automatic forfeiture of the wildlife at issue. Wash. Rev. Code § 77.15.100(3). In signing these SOCs, the Bocks agreed to the statutorily mandated consequence of forfeiture of the seized materials, pursuant to section 77.15.100(3). Attempting to avoid this consequence would be "clearly inconsistent" with the SOCs; would certainly create the impression that the first court was misled; and would endow the Bocks with a significant unfair advantage. As the district court found, the Bocks are estopped from taking positions inconsistent with the SOCs.

The Bocks attempt to save their constitutional claim by arguing that they did not "knowingly and voluntarily" waive their right to challenge the forfeiture, in particular, when they entered into the SOC. This too must fail. So long as a claimant is given notice of the seizure of property pursuant

to a search warrant, the state has fulfilled its due process obligations, for the claimant "can turn to . . . public sources to learn about the remedial procedures available to him." *City of West Covina v. Perkins*, 525 U.S. 234, 240–41 (1999). The state need not undertake any other steps or engage in "individualized notice." *Id*. at 241. Notably, the trial court repeatedly asked the Bocks to confirm that their consent to the terms of the SOCs was knowing and voluntary, and with the advice of counsel—which they did. *Cf. United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011) (entry of a disposition can be voluntary "even 'if the defendant did not correctly assess every relevant factor entering into his decision'"). Even the last page of the Bocks' motion for summary judgment concedes that they "might have been on notice."[2]

## III.    QUALIFIED IMMUNITY

The Bocks only argue on appeal that the defendants are liable under the Fourteenth Amendment for violating their constitutional rights. Without an actionable constitutional claim, the Bocks' arguments with respect to liability and

---

[2] As a technical matter, even assuming that only the as-applied constitutional challenge is estopped by the SOCs, the Bocks' completion of the SOCs nonetheless deprived them of standing to bring a facial constitutional challenge. A facial challenge to a statute requires a plaintiff to "show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1111–12 (9th Cir. 1999) (internal quotation marks omitted). Because the Bocks agreed to statutory forfeiture by completing the SOCs, they have not sustained and are not in danger of sustaining a direct injury resulting from the forfeiture statute.

qualified immunity also fail.**³** *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (internal quotation marks omitted)).

**DISMISSED IN PART AND AFFIRMED IN PART.**

---

**³** We decline to address the Bocks' conclusory assertion that the district court's judgment should be reversed with respect to Officer Jones because he did not file or join in the motion for summary judgment. The Bocks waived this issue by failing to argue it "specifically and distinctly." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).